## WESTERN UNION TELEGRAPH COMPANY *v.* STATE OF GEORGIA *et al.*

RUSSELL, C. J. 1. The State of Georgia in its sovereign capacity is the owner of the Western and Atlantic Railroad and the right of way upon which it is constructed.

2. Section 6 of the act of 1852 (Acts 1852, p. 193), the caption of which

is "an act to incorporate the Augusta, Atlanta,- and Nashville Magnetic Telegraph Company," is void, because it violates the clause of the constitution of 1798 which provides: "nor shall any law or ordinance pass, containing matter different from what is expressed in the title thereof."

3. Under the doctrine of nullum tempus occurrit regi, adverse possession as against the State of Georgia cannot provide the basis for a prescriptive title; and the State is not affected by a statute of limitations unless it expressly consents to be held subject thereto.

(*a*) Under the facts of this case a title by prescription could not be ripened by the possession of the predecessor in title of the plaintiff in error within the period of time when the State may be held to have waived the operation of the statute of limitations.

(*b*) The plea of laches is not available as against a sovereign State. The State cannot be guilty of negligence or any other similar act involving the omission to perform a duty devolving upon an ordinary citizen.

(*c*) The sale to Hammett did not convey anything but personalty.

Nos. 3515, 3521. September 14, 1923. Rehearing denied September 29, 1923.

Equitable petition. Before Judge Ellis. Fulton superior court. November 2, 1922.

Justice Hines being disqualified, Judge Custer, of the Albany Circuit, was designated to sit in his stead.

*W. L. Clay, Dorsey, Brewster, Howell & Heyman,* and *Francis R. Stark,* for plaintiff in error.

*Tye, Peeples & Tye* and *Hooper Alexander,* contra.

Russell, C. J. There are, in all, more than one hundred assignments of error in the present case. Under ordinary juridical rules we should first deal with such assignments of error as are raised by exceptions pendente lite to rulings upon demurrers or motions to strike. The present record calls for decisions upon exceptions of each of these classes. After consideration of all of these exceptions we have reached the conclusion that the case must be decided upon the motion for a new trial, for the reason that the questions raised upon exceptions pendente lite, upon the demurrers and upon the motions to strike various portions of the defendant's answer, are all involved and to be adjudicated, in our conclusion, upon the points raised by the motion for a new trial; and for that reason the same reasons which control our ruling upon the motion for new trial would affect and control rulings to the same effect upon the almost innumerable number of exceptions raised preliminary to the trial. In the economy of time we pretermit specific discussion of the various preliminary assignments

of error, for the reason that the same controlling questions are raised both in the grounds of the motion for new trial, with which we shall deal, as are raised by the various assignments of error predicated upon the preliminary motions.

Considered in its ultimate analysis, the controlling issues in this case are very few. The action is one in which the State of Georgia seeks to remove alleged encroachments by the Western Union Telegraph Company from its right of way. The plea of the defendant, in its last analysis, amounts to nothing more than an assertion of title which will defeat the suit of the plaintiff. The action is not strictly an action in ejectment. It is an equitable petition in the nature of an action of ejectment. Since the passage of the uniform procedure act of 1887, as has frequently been ruled by this court, legal and equitable remedies may be had in the same suit in a superior court. So, at last, the case turns upon the question whether the evidence in behalf of the defendant is sufficient to set up any legal reason why it should not be dispossessed of that portion of the right of way of the Western & Atlantic Railroad which it asserts it is entitled to enjoy. It is not to be denied that in this action the plaintiff must recover upon the strength of its title, and not upon the weakness of the title of the Western Union Telegraph Company. Of the fact that the State of Georgia is the owner of the Western & Atlantic Railroad the lower court could properly take judicial cognizance, and no proof was required to establish the State's ownership. Therefore, upon the reading of the petition the plaintiff, even if this were a suit in ejectment, would have cast the burden upon the defendant to establish the validity of its claim of right or title; and therefore the issue is still further narrowed to the single question as to whether the defendant in this case carried the burden of establishing its right to occupy any portion of the right of way of the Western & Atlantic Railroad. We hold that there was a failure on the part of the defendant in the court below (plaintiff in error) to establish its contention that it was the owner of any interest whatsoever in the right of way of the Western & Atlantic Railroad, either by grant, prescription, or otherwise, and that for that reason any error committed by the court during the trial was *powerless* to prevent the verdict rendered by the jury and the judgment entered thereon.

I am of the opinion that the judgment of the trial court in over-ruling the motion for a new trial was right. There was no error in this ruling, because, in my opinion, the verdict was demanded by the evidence, for the reason that the case is controlled by two propositions under which the jury could not have found other-wise than they did; and for that reason the merits of all remaining assignments of error are irrelevant and immaterial. I freely concede that there were quite a number of errors in the conduct of the trial, but none of them affected or could have affected the result reached in the case, and in my opinion no other result could have been attained, either as a matter of reason or of law.

1. There can be no question that the State is the owner of the right of way of the Western & Atlantic Railroad, and has been its owner since the first beginning of the undertaking and from the time when the State invested its first dollar in the enterprise. It is immaterial at this time and for the purposes of this case to decide whether the ownership is in fee or only as an easement. But even if it be conceded for the sake of argument that the State only acquired an easement for its right of way, it must be held that no right, interest, or enjoyment of even what the plaintiff in error admits is owned by the State has ever been lawfully granted by the State to any one. It is insisted by the plaintiff in error that in granting the charter of the Augusta, Atlanta & Nashville Magnetic Telegraph Company in 1852 (Acts 1852, p. 193) the State ratified the contract which had previously been entered into by William L. Mitchell with the approval of Governor Towns (then chief executive of Georgia), and by the terms of which the Augusta, Atlanta & Nashville Magnetic Telegraph Company (under which defendant claims its title) was granted the easement which the defendant claims. The correctness of this position must depend upon the validity of section 6 of the act which relates to the contract entered into on the 11th day of October, 1850, by William L. Mitchell, chief engineer of the Western & Atlantic Railroad, and E. W. Garst and J. M. Bean, as well as other provisions of the charter to which we shall later refer more specifically.

2. In our opinion, section 6 of the act of 1852, supra, was and is unconstitutional and absolutely void. The caption of the act is as follows: "An act to incorporate the Augusta, Atlanta & Nashville Magnetic Telegraph Company." It will be noted at the out-

set that the caption does not contain the words " *and for other purposes,*" usually found in captions to legislative acts. It is an act with but one purpose, — to *incorporate* the Augusta Atlanta and Nashville Magnetic telegraph company. There is not the slightest indication in the title of any connection with any other subject than the conveyance of such powers as would usually be conveyed in a charter authorizing the business of telegraphy to be done by a corporate body, — thus permitting an artificial person as such to carry on the business of telegraphy such as a natural person might have done. In a caption so abbreviated there is no suggestion that there would be any provision as to the right of way, or easement, or franchise, call it what you will, except those that ordinarily appertain. For this reason it is inferable from the caption that if the proposed corporation entered the telegraph business it would have to secure its right of way in the manner provided by law. This would mean either by acquiring the right of way by gift or purchase from the owners of the land which its line would traverse, or by condemnation proceedings. And it has been held by this court that this particular right of way cannot be condemned without express legislative authority, and none such has been granted by the sovereign State. *Western Union Telegraph Co.* v. *Western & Atlantic Railroad Co.,* 142 *Ga.* 532, 534 (83 S. E. 135).

Further, there is no intimation or suggestion that the additional powers attempted to be conveyed in the act, to which we shall presently refer, were intended to be given. The act is only to incorporate a named company, which, it might be assumed from the use of the word " telegraph," would engage in the business of taking and sending messages by telegraphy. There is no reference, for that matter, to the fact that any powers or rights of any kind were conveyed more than the creation of a corporation which would conduct a telegraph business. From the caption, one would as easily infer that the company had already acquired a right of way as that it was still to be acquired, or that the right of way was to traverse one route as well as another, provided communication was made between the cities named, to wit, Augusta, Atlanta, and Nashville. Certainly it would have taken an extraordinary imagination to conceive, or more than a prophetic ken to know, from a reading of the caption of the proposed act upon which the

members of the General Assembly were called upon to vote, that an act with such a caption had within its body a provision by which it was to receive from the State of Georgia a perpetual use of any property owned by the State. Not a single member of the General Assembly would be apprised of the fact that an act incorporating any named individuals would include therein a sale or donation of any portion of any property of the State; and yet, if the proposition now insisted upon by the plaintiff in error be correct, it would have been permissible for the General Assembly to have made a donation to this company of its entire right of way. This is not the usual rule. In this case, if the contention insisted upon be sustained, the use of the word "incorporate" may include not only the right of the State to create such corporation but the obligation to assist in its formation and to contribute to its support; and therefore, instead of the general rule by which the grant of a charter merely gives life to a new creature with the duty devolving upon the new creature to work out its own destiny (or, to use the more expressive vernacular, to "root hog or die"), the term "incorporate" would contain an inference that not only were certain persons authorized to form an association to carry on a certain business in their own behalf and by their own efforts, but that it must be held to mean that the State by donation or by contract was also contributing in a material way to the success of the corporation about to be created. It is a remarkable fact that, so far as is known, this is the first instance since the great Yazoo Fraud that such covert legislation was attempted in Georgia. In our opinion the caption of the act now under consideration would have been just as misleading to the members of the General Assembly of 1852 as the act entitled an act "for the payment of the late State troops," which contained a provision for the disposition of Georgia's entire western territory, to repeal which James Jackson resigned from the Senate of the United States in order to become a member of the General Assembly. To my mind, this section of the act of incorporation is void; and consequently no rights thereunder can be derived by the defendant in this case, because its predecessors had none.

We have dealt with one peculiar feature which avoids section 6 of the act of 1852, but there is nother. The contract which was sought to be ratified is as follows:

"Chief Engineer's Office, W. & A. R. R. Atlanta, Oct. 11, 1850.

"Gentlemen: I have given much reflection to the subject of your note of yesterday, and I have had full and free conversation with his Excellency Geo. W. Towns, upon the subject; and we are fully satisfied, not only from the nature of the telegraph but from the experience of other roads, that there is no appendage more valuable in the efficient management of a railroad than a telegraph line, and we have come to the conclusion to submit to you this proposition.

"1. To furnish and erect the posts from Atlanta to Chattanooga, which shall be 24 feet long with four inches in diameter at the little end, and be planted four feet in the ground.

"2. To grant you the use of our right of way for the telegraph company, and to pass your officers and material along the road free of charge.

"3. For and in consideration of the foregoing, the W. & A. R. R. is to receive the sum of five thousand dollars to be placed to its credit upon the books of the Telegraph Company; and instead of interest on that sum, it is to receive dividends as they may be declared from time to time, and to be represented in the meetings of the company to that amount, by the Chief Engineer or such other person as may be appointed to represent the same.

"4. And in further consideration of the foregoing services and grant, all the telegraph offices between Atlanta and Nashville erected by the company shall be subject to the use of said road free of charge, and said company shall erect as many offices as the road may require in addition to the regular offices of the company, but the latter shall be at the expense of the road.

"Yours respectfully, Wm. L. Mitchell, Chief Engineer."

"Mr. David W. Garst and Mr. James M. Bean. Atlanta, Ga."

"Atlanta, Oct. 11, 1850. Sir: We hereby accept the proposition submitted in yours of this date.        Yours respectfully,

D. W. Garst. J. M. Bean.

"To W. L. Mitchell, Esq., Chief Engineer, Atlanta, Ga.

In the sixth section of the act which the legislature attempted to ratify there is no statement whatever as to the purport, scope, or provisions of the alleged contract. How, therefore, does it appear from the act that the legislature knew anything as to the terms of this contract; and how could they know that there was in this con-

tract an agreement on the part of the State relating to a right of way, or easement, or franchise; or how could they know that embodied in the contract was an agreement that the State would take $5000 worth of stock in the Augusta, Atlanta & Nashville Magnetic Telegraph Company? The contract as set forth would be void for indefiniteness of description, unless the terms of the contract are set forth in the act so that not only the General Assembly but also every member of the general public, who are presumed to know the law, can be apprised that the contract referred to is part of the law which the public is required to know. In the act of 1852, which according to its caption is merely an act to incorporate the Augusta, Atlanta & Nashville Magnetic Telegraph Co., there is included, without the knowledge of the public, a provision that the State of Georgia is granting a definite right of way or easement which shall encumber its right of way for all time, when the caption does not even indicate that the line which the company intends to build will follow its right of way, or that it may not be several miles away from various portions of its right of way; because it is geographically possible to build a telegraph line from Atlanta to Nashville without even passing Chattanooga, Kingston, Marietta, and hundreds of other points along the actual right of way.

The plaintiff in error seeks to draw a distinction between its rights in Tennessee and those as related to the portion of its line in the State of Georgia, contending that in any event it cannot be deprived of its right to use that portion of the line of the Western & Atlantic Railroad which is within the State of Tennessee. The privilege of making surveys in Tennessee was conferred *" upon the State of Georgia."* Acts of Tennessee Jan. 24, 1838; Cobb's Digest p. 420. The right to construct in Tennessee was given to the *" State of Georgia to be enjoyed and exercised by that State."* Acts of Tennessee, February 3, 1848; Cobb's Digest, p. 421. Thus it will be seen that the grant from the State of Tennessee to the State of Georgia was without words of limitation. That being so, the telegraph company will not be heard to question the capacity in which the State of Georgia acquired these powers from the State of Tennessee; and certainly this court will not supply words of limitation upon that capacity where none were demanded by our sister State. The State of Tennessee at least recognized that

Georgia was building the road as a sovereign State, and that it was to own the right of way acquired by it, with the permission of the sister State, in its sovereign capacity; and for this reason we think the same rule which has been applied as to the claim of right of way or easement or franchise by the plaintiff in error as to the portion of the line in Georgia is likewise applicable to Tennessee. The decisions that are cited to sustain the proposition that a State may sometimes divest itself of its sovereign capacities and be reduced to the lower level of partnership in business undertakings are not applicable in this case, because the State of Georgia has not, and never has had, joint ownership in the Western & Atlantic Railroad with any person or corporation. Further, the fact that a sovereign State may engage in a business does not necessarily deprive it of its sovereign governmental characteristics or powers, where the business is used as a means of carrying out one of the important prerogatives and duties of government. It is a matter of history that the main and controlling reason why the State of Georgia determined to build the Western & Atlantic Railroad was not a matter of profit, but a matter of transportation for the benefit of all its citizens — to give the people of Georgia the benefit of water transportation from Ross's Landing, by way of the Tennessee, Ohio, and Mississippi Rivers, not only with the grain fields of the West, but with the coal fields of Pennsylvania and Ohio. Provision for safe, cheap, and convenient transportation is the exercise of a legitimate governmental function; and for this reason we reject the argument that the cases cited from several jurisdictions sustain the proposition that the building and operation of the Western & Atlantic Railroad altered the status of Georgia as a sovereign State, and reduced her to the same position in regard to this enterprise as she would have occupied as an individual.

3. But even if we were to concede that the verdict was not demanded by reason of the invalidity of the act incorporating the Augusta, Atlanta & Nashville Magnetic Telegraph Company, the plaintiff in error could under no view of the evidence adduced have maintained its claim to a franchise, as against the State of Georgia, upon the ground of prescription, as is contended, under color of title and open, notorious, peaceable, adverse possession for a period of seven years. But the evidence in this case entirely fails to establish the existence of the statutory period of seven

years. Conceding for the sake of the argument, but not admitting, that the evidence shows that Bean and Garst erected their telegraph lines (though it does not appear that they had erected anything at that time), by erecting a telegraph line in 1857, and tacking their possession to that of Hammett, who purchased from the A., A. & N. M. T. Co., the M. T. Co. was in possession until the passage of the act adopting the Code of 1861, and the period of time amounts to only a little over four years. Upon the adoption of the code their possession was legally interrupted just as completely and effectually as though they had been ejected by a sheriff under a writ of possession issuing upon a judgment in ejectment. Conceding for the sake of the argument that they were rightfully in possession under some claim of right, there was not a sufficient length of time in which such possession existed as could ripen a prescriptive title. What we have said is upon the assumption that it be admitted that prescription can ripen against the sovereign State, and that the statute of limitations can be applied to a commonwealth; neither of which do we admit. Of course any such proposition as that a sovereign State can be barred by the statute of limitations is denied by the well-known maxim nullum tempus occurrit regi. As we understand prior decisions of this court the application of that ancient maxim has been frequently affirmed. Of course an exception to this rule is recognized where the State does consent to be bound by a statute of limitations, or to admit the existence of title by prescription under proper facts as existing in a particular case; but there is no evidence in this record that shows the existence of such a condition.

I am authorized to state that Mr. Justice Hill and Mr. Justice Gilbert concur in the views herein expressed.

CUSTER, J. The State of Georgia as owner of the Western & Atlantic Railroad, and the Nashville, Chattanooga & St. Louis Railway as lessee from the State of the Western & Atlantic Railroad, operating said railroad under the corporate name of Western & Atlantic Railroad, brought their equitable petition against the Western Union Telegraph Company, alleging, in substance, that the State is the sole and exclusive owner of the railroad, together with its right of way and properties, extending from Atlanta, Georgia, through certain counties named, to Chattanooga, Tennessee; that all of the property appertaining to said railroad, includ-

ing its right of way and terminals, is exclusively owned by the State, directly and immediately, in its sovereign or governmental capacity; that the railroad has never been incorporated, has no capital stock, and does not constitute a legal entity, but is public property, and the income derived therefrom constitutes a part of the public revenue, and is, under the laws of the State, devoted to public use; that the telegraph company is maintaining and operating over, upon, and along the right of way of the Western & Atlantic Railroad, between Atlanta and Chattanooga, telegraph lines, poles, wires, etc., employed by it in the conduct of its business; that the use and occupation of said right of way is without authority from the State, contrary to the will and consent of the lessee, and constitutes an unlawful encroachment upon the right of way and an adverse use thereof, and that the continued use of said right of way by the telegraph company is in derogation of the State's right and title thereto, operates adversely to the rights and interests of the lessee in the full use and enjoyment of the right of way, and, being without warrant of law, constitutes a continuing and a constantly recurring grievance. The prayers of the petition were, in part: For a decree declaring the telegraph company to be without lawful right or authority to use and occupy any portion of the right of way of the Western and Atlantic Railroad, and commanding it to desist from such use and occupation; that the telegraph company be perpetually enjoined from the use and occupancy of any part of said right of way for the conduct of its business or maintenance of its poles, etc., and from any entry upon or act of trespass on said right of way incidentally to or in connection with the operation and conduct of its business; and from in any wise disturbing or interfering with the free and unrestricted possession and use of the right of way by the State and its lessee. In its answer the defendant admitted that the railroad was constructed by the State from Atlanta to Chattanooga, but neither admitted nor denied that it was constructed solely out of public funds. It denied that the State was the owner in fee simple of the land through and over which the railroad was constructed. It admitted that the State owned the Western & Atlantic Railroad and the easements or rights of way necessary therefor, but denied that the lines of defendant upon, along, or over said right of way or the lands or easements taken therefor belonged to the State;

and alleged that said lines, land, and easements were and had for a long time been in the exclusive and adverse possession of the defendant. It denied that the railroad, including its right of way and terminals, is owned by the State in its sovereign governmental capacity. Defendant admitted that it is maintaining and operating, over, upon, or along "what is known as the right of way of the Western & Atlantic Railroad" between Atlanta and Chattanooga, telegraph lines, poles, wires, etc., and claimed that it had continuously so owned, maintained, and operated the same, with the easements and interests in land necessary therefor, from about June 12, 1866, to the present time, and that its predecessors in title had done so from the first construction about 1850. The defendant then described the location and character of its lines of poles and wires, which it stated were "situate upon or along the said Western & Atlantic Railroad and its right of way," the poles being stated to be situate on the average of about 22 feet from the nearest rail of the main-line track of the railroad; and it averred that the easements claimed to be possessed, used, and operated by it and its predecessors in title were irrevocable, perpetual, and assignable easements or rights "in, upon, through, over, and across the Western & Atlantic Railroad and its right of way."

Several acts of the General Assembly were pleaded under which defendant claimed the right to maintain the line as now operated. Further, it set up that on October 10, 1850, Garst and Bean, who proposed to organize a corporation and build a telegraph line from Atlanta to Nashville, subsequently made to embrace the Georgia Railroad and extend to Augusta, made known the proposal to the chief engineer of the Western & Atlantic Railroad, expressing a desire to procure the aid of the said railroad in the construction of a line of telegraph by a corporation to be called the Augusta, Atlanta and Nashville Magnetic Telegraph Company. Thereupon W. L. Mitchell, chief engineer, on October 11, 1850, wrote to them a letter offering to grant to them, for purposes mentioned, an easement on the right of way of the Western & Atlantic Railroad, "without limit and perpetual in its nature," which proposition and offer was accepted by them on October 11, 1850; and thereupon Mitchell issued instructions for the carrying out of the contract so made. By the act of the General Assembly of Georgia of January 27, 1852, the State incorporated the Augusta, Atlanta

& Nashville Magnetic Telegraph Company, to do business from Augusta through Atlanta to Nashville, with the usual powers of corporations; and in the act expressly ratified the contract last above mentioned, and expressly enacted that said telegraph company " shall have power and authority to set up their fixtures along and across any high road or high roads, and any railroad which now or may hereafter belong to this State and any water or watercourses of this State." Under this contract and statute the first line of telegraph upon and along the Western & Atlantic Railroad was constructed; and said Telegraph Company, as the defendant contended, was thereby granted and acquired perpetual, irrevocable, and assignable easements for the construction, maintenance, and operation thereof. The defendant then set forth a series of conveyances and transactions by which it became the successor in title to the original Magnetic Telegraph Company.

At the hearing a motion in the nature of a demurrer, to strike numerous paragraphs of defendant's answer and amendments to its answer, was submitted. Certain of these grounds were overruled by the court, but many of them were sustained. To the rulings sustaining the motion to strike, the defendant excepted pendente lite. The jury returned a verdict for the plaintiff. A motion for a new trial was made by the defendant, which was overruled, and it excepted to that judgment.

Conceding that the property involved in this controversy, including the railroad, its right of way and terminals, is exclusively owned by the State in its sovereign or governmental capacity, we do not think that the conclusion reached by the Justices who are in favor of affirming the decision of the court below is sound. It is unnecessary to discuss the large number of subsidiary questions which are raised by exceptions to the rulings upon pleadings and exceptions to the rulings made pending the trial. The holding of the trial judge, in effect (with which three of the Justices of this court agree), that the property involved here was held by the State in its sovereign and governmental capacity, that neither the statute of limitations nor prescription operated against the State, and that the State lost none of its rights by laches, is conclusive as against the defendant, unless the defendant obtained the easement which is claimed in its answer by virtue of the contract between W. L. Mitchell, chief engineer of the Western & Atlantic Railroad while

operated by the State, and Garst & Bean, entered into on the 11th day of October, 1850. If this contract was a binding contract upon the State, then the right to use the right of way of the Western & Atlantic Railroad was conveyed and granted to the telegraph company, together with certain privileges and appurtenances to which it is not necessary to refer. The controlling question, in passing upon the court's ruling upon the pleadings in this case, is whether that contract was executed in such a way as to make it binding upon the State and the other parties thereto. The contract consists of a proposal or offer in the following words, and its acceptance:

" Chief Engineer's Office, W. & A. R. R. Atlanta, Oct. 11, 1850.

" Gentlemen: I have given much reflection to the subject of your note of yesterday, and I have had full and free conversation with his Excellency, Geo. W. Towns, upon the subject; and we are fully satisfied, not only from the nature of the telegraph but from the experience of other roads, that there is no appendage more valuable in the efficient management of a railroad than a telegraph line; and we have come to the conclusion to submit to you this proposition.

" 1. To furnish and erect the posts from Atlanta to Chattanooga, which shall be 24 feet long with four inches in diameter at the little end, and be planted four feet in the ground.

" 2. To grant you the use of our right of way for the telegraph company, and to pass your offices and materials along the road free of charge.

" 3. For and in consideration of the foregoing the W. & A. R. R. is to receive the sum of five thousand dollars, to be placed to its credit upon the books of the Telegraph Company; and instead of interest on that sum, it is to receive dividends as they may be declared from time to time, and to be represented in the meetings of the company to that amount, by the Chief Engineer or such other person as may be appointed to represent the same.

" 4. And in further consideration of the foregoing services and grant, all the telegraph offices between Atlanta and Nashville erected by the company shall be subject to the use of said road free of charge, and said company shall erect as many offices as the road may require in addition to the regular offices of the company, but the latter shall be at the expense of the road.

" Yours respectfully, Wm. L. Mitchell, Chief Engineer.
To Mr. David W. Garst and Mr. James M. Bean, Atlanta, Ga."

This proposal in the form of a letter was written and submitted on October 11, 1850, and on the same day Garst and Bean, to whom the letter was directed, accepted the proposal made, in the following words:

"Atlanta, Oct. 11, 1850. Sir: We hereby accept the proposition submitted in yours of this date. Yours respectfully,

D. W. Garst, J. M. Bean.

"To W. L. Mitchell, Esq., Chief Engineer, etc. Atlanta, Ga."

If Mitchell had the right and authority to execute such a contract as this as an agent of the State, the proposal and the acceptance of it gave to the telegraph company, for whom Garst and Bean were acting, an easement over the right of way of the Western & Atlantic Railroad. But even if Mitchell was not vested with authority to conclude such a contract (and we do not mean to rule nor intimate that he was), if the contract was afterwards approved and duly ratified by the General Assembly of this State, which did have the authority to grant and convey such an easement, then the contract became binding upon the State. On the 27th of January, 1852, the General Assembly of the State of Georgia passed an act entitled " An act to incorporate the Augusta, Atlanta and Nashville Magnetic Telegraph Company:" By certain sections of this act the General Assembly incorporated the Augusta, Atlanta and Nashville Magnetic Telegraph Company, the company for whom Garst and Bean had been acting as agents or promoters when the contract between them and Mitchell, above set forth, was entered into. In this act of incorporation is the following: " Section 6. And be it further enacted, that the contract entered into on the eleventh day of October, 1850, by William L. Mitchell, Chief Engineer of the Western and Atlantic Railroad, and D. W. Garst and J. M. Bean, on the part of said company, be and the same is hereby ratified and affirmed, and that at every election each share shall entitle its holder to one vote, and absent stockholders may vote by agent or proxy, on producing written authority so to do. And in case of an equal number of votes on both sides, the election shall be decided by lot, and the Chief Engineer of said railroad, or other officer having the chief control of said road for the time being, shall by himself, or his proxy duly authorized, cast the vote to which the State is entitled under said contract." This section of the act is an approval and

complete ratification of the contract entered into between Mitchell and Garst & Bean, and from the date of its ratification, if not from the date of the contract, had the effect of granting to the telegraph company the franchise which permitted it to maintain and operate a telegraph line over the right of way of the Western and Atlantic Railroad.

It is contended that the section of the act last referred to did not have the effect of ratifying and making valid the contract between Mitchell and Garst and Bean. One ground upon which this contention is based is that the section of the act relating to this contract is not sufficiently explicit; that it does not show that the particular contract under consideration, and which we have insisted above was adopted and ratified, is the contract referred to. Surely this contention must fall, upon a mature consideration of the terms of the contract and the act ratifying it. It is true that the act does not set out all of the terms of the contract, but it sufficiently describes it to identify it and to make clear the fact that the intention of the legislature was to ratify the contract as contained in the proposal and acceptance. It describes the contract as "that contract entered into on the 11th day of October, 1850, by William L. Mitchell, Chief Engineer of the Western & Atlantic Railroad, and D. W. Garst and J. M. Bean on the part of said company." There is no suggestion in the evidence anywhere that there was any other contract to which this could refer; and there is no suggstion that there was ever any other contract between Mitchell and Garst and Bean. It is true the act in this section refers to "said company," without naming it, but in other parts the act incorporating the Telegraph Company shows, beyond peradventure, the company to which it refers, and identifies it as the Magnetic Telegraph Company. With these facts before us, and no facts upon which to base any other suggestion, it seems to us established beyond a doubt that the contract ratified and approved is the contract which we have set out above, and under which the easement was granted.

But it is also urged upon the part of the plaintiff that section 6 of the act is unconstitutional, in that it contains "matter different from what is expressed in the title thereof." We are of the opinion that this contention is without merit. The title of the act is, " An act to incorporate the Augusta, Atlanta and Nashville Magnetic

Telegraph Company." Can it be doubted that under that title it was competent for the legislature to embrace matters relating to the capital, shares, organization, officers of the company and their authority; to make provisions for authority to connect with other lines, and provide that it might run along or across highways; handle dispatches sent over the lines; that it should be penalized for neglect; that the operators should be exempt from certain jury and militia duty, etc.? It does deal with all of these subjects, and there is no suggestion that the title was not broad enough to cover all of these matters. But section 6 of the act declares that a certain contract shall be ratified; and that is the very contract that made the existence of the company most feasible and possible, and the plan for bringing into existence the telegraph line feasible. That provision in the charter affirming the contract has a natural relation to the subject-matter of the act. It was not foreign matter, so it seems to us, upon considering the purpose of the act and the subject-matter of this section; and a similar opinion was entertained by this court and laid down as a correct principle in the solution of a question almost identical with this in principle. In the case of *Goldsmith* v. *Rome R. Co.,* 62 *Ga.* 473, it was said: " An act incorporating a railroad company need not express in its title any of the powers, rights, privileges, or immunities which the charter is intended to confer. The charter of a private corporation is a contract as between the State and the corporation; and the stipulations, terms, and conditions of a contract are to be looked for in the body of the instrument, not in the title or caption." In the course of the opinion in that case it was also said: " It seems to me that an application of the foregoing points and principles to the case at bar will render it clear that a clause in the charter of a railroad company exempting its stock from taxation, or fixing a rate of taxation to which it shall be liable, or prescribing a particular mode of taxing it, does not contain matter different from, or inconsistent with, what is expressed in the title of ' An act to incorporate it.' What do we mean by an act ' to incorporate ' a railroad company? Suppose a bill to be entitled ' An act to incorporate the Rome Railroad Company ' should be offered in the legislature, what would the legislators present understand such a bill to be? What would they think was intended by it? What is expressed in the title of that sort of a bill? In

legal parlance, it means that the author of the bill proposes to make an artificial person, or to create a corporation for the purpose of constructing and operating a railroad, and to clothe it with such attributes and powers, and impose upon it such duties and liabilities, and to grant it such privileges and immunities, as in the judgment of the legislature will be necessary, or proper, or appropriate for such an enterprise. The very nature of a corporation indicates that such is a correct view of the objects and scope of an act of incorporation. All corporations are incorporated; and whilst there are some attributes and powers common to all, yet some have powers that others do not have. Some corporations have privileges and immunities that others do not have. Some corporations enjoy exemptions, and even monopolies, that others do not. Yet, they are all corporations, and all have been 'incorporated.' The act by which they are incorporated is usually called a charter, and we look to the charter of a corporation to find its attributes, its powers, its privileges, its immunities, and its exemptions, for the charter contains the grant and the measure of them all. If the corporation claims a right, a privilege, or an exemption, we look to its charter, the act incorporating it; and if it be found there, we yield to it the right, privilege, or exemption claimed; but if it be not so nominated in the charter, the claim is denied. I undertake here to assert, that the legislature of Georgia never passed 'an act to incorporate' any company, in the title of which the attributes, powers, rights, liabilities, privileges, immunities, and exemptions of the company were expressed; and yet all these have been granted and conferred upon corporations by their charters, under the simple title of 'an act to incorporate' the company." This last quotation was used in the *Goldsmith* case by Justice Bleckley, who quoted it from the opinion of the learned trial judge in that case, but quoted it with entire approval; and it covers and adjudicates in principle the question which we are called upon here to decide. Another case laying down the same principle is that of *Bonner* v. *Milledgeville Ry. Co.,* 123 *Ga.* 115 (50 S. E. 973).

Under the views here expressed, the court below erred in striking, upon motion of the plaintiffs, the part of the defendant's answer which set up the grant of an easement along the Western & Atlantic Railroad by express contract, subsequently ratified by the

legislature.  We are of the opinion that this part of the answer set up a valid defense to the suit as brought by the plaintiff, and the defendant should have been allowed to support the allegations of this part of the answer by proof, and it should have been allowed to deraign its title through successive conveyances from the Magnetic Telegraph Company to itself; and the court erred in striking those parts of the answer which indicated its chain of title.  What we have said above is directed, of course, to the question as to whether the court erred in sustaining the demurrers to the portions of the defendant's answer and the amendments thereto.  We have pointed out that in our opinion the court erred in sustaining the demurrers to certain portions of the answer and the amendments thereto which contain the main grounds of the defense.  In sustaining the demurrer to those portions of the answer and the amendments thereto indicated above, the court cut the ground from under the defendant's feet.  And while we are of the opinion that upon several questions the court erred in its rulings adverse to the defendant, it is unnecessary to take these up in detail, because the rulings upon the main grounds were controlling.

We have not discussed the grounds of the motion for a new trial, because, being of the opinion that the court erred in sustaining the demurrers to portions of the answer and amendments, we are further of the opinion that all that took place subsequently on the trial was nugatory.  The answer of the defendant, including portions thereof that were erroneously stricken, set up a good defense to the State's case; and we differ in toto with the three of our brethren who are in favor of affirming the judgment of the court below, upon the assertion that upon the case as a whole a verdict for the plaintiff was demanded.

Upon the question as to whether or not prescription would ripen against the State, or the lapse of time could be made the basis of prescription, or as to whether the State lost its right to assert title to any part of its right of way by laches, we concur in the position of the members of the court in favor of affirmance, but not in all that is said in the discussion of the question.

In maintaining that a reversal by this court is required by the errors of the court below, we plant ourselves upon the proposition that in parts of the plea and amendments stricken the defendant

showed a right by grant to the easement contested; that is, under the contract between Mitchell and Garst & Bean, as affirmed and ratified by the General Assembly. And we think that the transmission of this title through successive conveyances to this defendant could be shown in the way indicated in defendant's answer. The facts and circumstances pleaded should have been left for the consideration of the jury; and we are of the opinion that in view of those facts and circumstances pleaded, as well as the documents introduced which bore upon the question of title, the jury would have been authorized to find against the State; especially in view of the one monumental, towering, dominating fact that this defendant and its predecessors in title have for nearly three quarters of a century been in the peaceable enjoyment of the easement, the right to which is now denied it. If in any case a grant should be presumed, it should be presumed in favor of this defendant under the facts alleged and proved in this record. For the reasons stated, and for others which it is not necessary to discuss, we differ with the opinion of the other three Justices and the learned trial judge.

Presiding Justice Beck, Justice Atkinson, and Judge Custer concur in the foregoing views and opinion, in which they differ with the three Justices who are in favor of affirming the judgment of the court below.

*Judgment affirmed by operation of law. Cross-bill of exceptions dismissed.*