### SOUTHERN MINING COMPANY *v.* LOWE *et al.*

The writ of injunction does not, under any circumstances or at the instance of any person, lie against the prison commissioners of this State to restrain them from entering into a contract for the hiring of convicts, nor against any person or persons with whom the commissioners are about to make such a contract, when the granting of the injunction would, either directly or indirectly, interfere with the performance by the commissioners of the duties devolved upon them by the act creating a prison commission for this State.

Argued June 27,—Decided July 27, 1898.

Equitable petition. Before Judge Lumpkin. Fulton county. May 21, 1898.

*King & Anderson,* for plaintiff.

*John L. Hopkins & Sons* and *J. M. Terrell, attorney-general,* contra.

LUMPKIN, P. J.   The Southern Mining Company brought an equitable petition against W. B. Lowe, certain named corporations, and the prison commissioners of Georgia.   The case made by the plaintiff's allegations, so far as material to the present discussion, was, in brief, as follows:   Under the act of December 21, 1897 (Acts of 1897, p. 71), the prison commission invited bids for hiring the penitentiary convicts of this State. The plaintiff desired to obtain three hundred of them.   It entered into an agreement with Lowe, whereby he, as its agent, was to deal with the prison commissioners and in its behalf make bids for the 300 convicts it wished to hire.   A number of other named corporations and natural persons made Lowe their agent for the same purpose.   He was to bid in behalf of each party for the number of convicts each desired to procure; but no matter in whose behalf any convicts should be by him obtained from the State, nor whose bids for the same should be accepted, such number of convicts as were in fact awarded to him as the agent of all or any of these parties, whether more or less than the numbers actually bid for, should be distributed pro rata among all the corporations and other persons represented by Lowe.   After much discussion, it was finally agreed by Lowe and all the parties so represented by him, that, as their agent, he was to bid $96 per annum for each convict; though it was nevertheless further agreed that in the event the bids made in behalf of petitioner or the others represented by Lowe should not any of them be accepted, he was to continue to represent petitioner and the other parties in the effort to procure convicts, if, by the rejection of bids, further opportunity should be presented to deal with the prison commission so as to accomplish the end in view, viz., to obtain the use of some of the convicts to be hired by the State under the above-mentioned act, who were intended, in the case of the plaintiff, to be employed in working certain coal-mines owned and operated by it in Dade county.   The plaintiff vested in Lowe full and unconditional power to represent it, and agreed to be bound by any contract made by him in its behalf.   There were, in all, but 1,800 convicts to be hired by the prison commission.   In pursuance of the agreement above set forth, Lowe filed with the prison commission a paper

whereby, as agent of a number of specified parties, he offered to take for each a stated number of convicts at $96 per annum. In this paper he referred to plaintiff as the "Dade Coal Mines." Upon opening the bids received by them, the prison commissioners awarded to persons who had bid $98 per annum for each convict 1,100 convicts. As to the remaining 700, the commissioners declined to accept any bid of less than $98 per annum for each, and informed Lowe, as agent of the parties for whom he had made bids, that if he would raise the price offered for each convict from $96 to $98 per annum, the commission would award to him, as such agent, the 700 convicts yet to be hired. Lowe accepted this proposition, agreeing with the prison commission to take the 700 convicts at $98 per annum each, and they were awarded to him at that price. In view of all the facts, the plaintiff will be entitled to receive, at the expiration of the present lease, 122 of the 700 convicts awarded to Lowe as above set forth, this being its just proportion of the same. It has, through its president, demanded of Lowe that he cause to be made and delivered to it a contract executed by the prison commissioners, whereby it may be recognized as the lessee of the 122 convicts, but Lowe refuses to recognize petitioner's right to any portion of the convicts, and declines to comply with its demand, all of which is in fraud of its rights and in violation of the contract made between petitioner and Lowe. Petitioner has demanded of the prison commission not to enter into any contract with Lowe, or with any party named by him, so as to deprive petitioner of its proportion of the said 700 convicts; but notwithstanding this demand, these officials are proceeding to execute contracts for all of these 700 convicts to certain corporations named by Lowe as being entitled to the same, and refuse to enter into any contract with petitioner hiring to it any portion of the convicts. The refusal of the prison commission to make a contract with the plaintiff is based entirely upon the ground that it was dealing with Lowe as agent, and that he has denied that plaintiff was one of his principals. The prison commissioners have stated that if Lowe would name plaintiff as such, they would make a contract with plaintiff; and that if it is held that Lowe was acting for plaintiff, and it is entitled to

any of the convicts, they are ready to recognize plaintiff as one of the bidders and contract with it accordingly. Among other things, the plaintiff prayed that the defendants be enjoined from entering into any contracts with reference to the 700 convicts awarded to Lowe which do not recognize its rights in the premises.

All of the defendants demurred to the petition, upon the ground that it was without equity and set forth no cause of action. Lowe answered the petition, admitting that an arrangement was entered into between himself and the president of the plaintiff, by which he (Lowe) was authorized to bid for convicts for it at the price of $96 per annum, but denying that any authority was conferred upon him to make any other bid in behalf of the plaintiff or to contract for the hiring to it of any convicts at a price higher than that just named. In his answer he also denied that the plaintiff had given him unconditional power or authority to represent it in the matter, or had agreed to be bound by any contract he might make in its behalf. The answer further alleged, in substance, that in making the contract for the hiring of convicts, Lowe was in no sense representing or acting for the plaintiff. At the hearing, the judge heard evidence upon the merits and passed an order refusing to grant the injunction. In this order, however, it is distinctly stated that the injunction is denied "upon purely legal grounds, and not upon any matter of discretion with reference to conflicting evidence." The question is therefore squarely presented, whether or not, upon the assumption that the plaintiff's allegations were proved, it was entitled to the injunction for which it prayed. We agree with the trial judge in holding that it was not.

The 11th section of the act of 1897 provides that the prison commission shall advertise for bids for the hiring of all the penitentiary convicts not disposed of by the preceding sections, and distinctly declares that the commissioners "may reject any and all of said bids, and may make any other contract of hiring on the plan specified which, in their judgment, will carry out the intentions of this act and subserve the best interest of the State." That this language confers upon the commissioners

very broad discretionary powers is apparent from a most casual reading. These powers are to be exercised for and in behalf of the State. It is an essential party to the business; indeed, the only party interested on one side of the great question of disposing of its convicts. The State owns their labor; no one can acquire an interest therein except by a contract with the State; and whatever agency may be employed in making such contract, the State is the real lessor. The prison commissioners in the present case are sued as officials having no personal interest in the subject-matter of the suit. The injunction sought, if granted, would be against representatives of the State in their official capacity, and therefore neither more nor less than a judicial proceeding against the State itself. It has not consented to be sued directly, nor authorized the bringing of an action against the prison commission. It is well settled that executive officers of a State exercising functions in which they have discretionary powers can not be reached by injunction. In *Schofield* v. *Perkerson*, 46 *Ga.* 359, Chief Justice Warner said that the issuing of executions by the comptroller-general to collect the public revenue due the State was "the act of the executive department of the State government," and that the courts have no power or authority "to restrain that department of the government from doing so." And see, in this connection, *Peeples* v. *Byrd*, 98 *Ga.* 688, 694, 695. It makes no difference that the injunction is not sought against the Governor by name nor against the State as a commonwealth. The effect of granting the injunction would nevertheless be to enjoin the State itself from entering into and carrying out a contract through its officers connected with the executive department. These latter can no more be reached by the process of injunction than can the Governor himself. As stated in 2 High on Injunctions, § 1326: "The true test in all such cases is as to the nature of the specific act in question, rather than to the general functions and duties of the officer. If the act which it is sought to enjoin is executive instead of ministerial in its character, or if it involves the exercise of judgment and discretion upon the part of the officer, as distinguished from a merely ministerial duty, its performance will not be prevented by injunction."

The position urged by counsel for the plaintiff in error, that Lowe and his codefendants other than the prison commissioners could properly be enjoined, can not be adopted as sound. Such a course would simply result in indirectly enjoining the commissioners, and this can not be done in any manner. Nothing ruled in any of the following cases conflicts with what is now decided. The case of *Wright* v. *Southwestern R. Co.*, 64 *Ga.* 783, is not in point. That case turned upon the propositions, that there was no valid law authorizing the collection of the taxes alleged to be due by the railroad company, and that consequently the issuing of the executions by the comptroller-general and the levying thereof by the sheriff were illegal acts which a court of equity should restrain. What has just been said is also applicable to the case of *Mayo* v. *Renfroe,* 66 *Ga.* 408. The main and controlling issue in the cases of *Georgia Penitentiary Company Number Two* v. *Nelms,* 65 *Ga.* 67, Ibid. 499, *Same* v. *Same,* 67 *Ga.* 565, and *Same* v. *Same,* 71 *Ga.* 301, was whether or not, as a matter of law, the Marietta & North Georgia Railroad Company was entitled to certain convicts. The determination of this issue depended upon purely legal questions. The principal keeper of the penitentiary was charged with no duty with reference to these convicts which was otherwise than merely ministerial. Neither the making of a contract by him nor the exercise of any discretion on his part was involved.

In reply to the suggestion that the injunction sought in the present case ought to be granted because the prison commissioners raised no question as to the jurisdiction of the court over them, and had assured the plaintiff that if convinced that Lowe really was its agent in contracting for a portion of the 700 convicts they would enter into a contract for the hiring to the plaintiff of its proportion of the same, it need only be said that these commissioners can not, by waiver or otherwise, give to the courts jurisdiction of the State in a case of this nature; nor can they thus delegate to the courts a question the decision of which devolves upon them. It is their duty to ascertain whether the plaintiff was one of the principals for whom Lowe was acting as agent, and to govern their action in the premises accordingly.

We do not deem it necessary to enter into a more elaborate discussion of this case. The principles by which it is controlled were stated and discussed at length in *Peeples* v. *Byrd,* supra, and the correctness of the doctrine there laid down, and to which we now adhere, could be supported by the citation of authorities ad nauseam. We are fully convinced that the trial judge was right in refusing to grant the injunction, and that his judgment was based upon correct reasons.

*Judgment affirmed. All the Justices concurring.*