WESTERN UNION TELEGRAPH COMPANY *v.* WESTERN
AND ATLANTIC RAILROAD COMPANY; *et vice versa.*

1. The statute providing for the condemnation of property for public use is applicable only to privately owned property, and not to property owned by the State.
2. Inasmuch as the usufructuary interest of the lessee of the railroad belonging to the State is not subject to condemnation as an independent estate or interest in land, and as no legislative provision is made for condemning the State's property, ,the grant of the injunction, complained of was not erroneous.

SEPTEMBER 30, 1914.

Injunction. Before Judge Bell. Fulton superior court. September 6, 1913.

*Dorsey, Brewster, Howell & Heyman,* for plaintiff in error.
*Tye, Peeples & Jordan,* contra.

EVANS, P. J. The State of Georgia owns a railroad extending from Atlanta to Chattanooga, Tennessee. The railroad was leased by an act of the legislature for a term of years; and the lessee was made a body corporate, under the name and style of the Western and Atlantic Railroad Company. The Western Union Telegraph Company desired to construct a line of telegraph wires upon the right of way of the railroad, and, being unable to agree with the State's lessee, proceeded under the statute to condemn the interest of the lessee, so as to allow the construction of the line. The railroad company filed a petition to enjoin the telegraph company from proceeding further with the condemnation. The court refused the injunction, and a writ of error was taken to this court. Among other things decided was that "The lessee of the State's road has only a usufructuary interest therein, and this can not be condemned by the telegraph company separately and apart from the State, in the absence of legislative sanction. Any condemnation proceeding must be against both." 138 *Ga.* 420 (6), 421 (75 S. E. 471, 42 L. R. A. (N. S.) 225). The telegraph company undertook to amend the notice to condemn, to meet certain rulings made in that decision; and also undertook to make the State a party to the proceedings. The railroad company amended its petition for injunction, contending that the telegraph company was not entitled to proceed with the condemnation upon any of the grounds set forth in the proposed amendment to the condemnation, and for other reasons. On the hearing the court ruled that the State of Georgia

was a necessary party to the condemnation proceedings, and, as the State had never been properly made a party, the lessee company was entitled to the injunction sought. Exception is taken to this ruling.

When the case was formerly before this court, one of the points to be decided was whether the lessee had such an interest in the railroad as would authorize, by condemnation proceedings, the telegraph company to construct a line of telegraph on the property of the State. This point was decided adversely to the telegraph company. The decision of the court went to the point, that as the lessee's interest was only to enter upon and enjoy the use of the property leased, it had no estate or interest which was subject to the exercise of the right of eminent domain. It was further held, that, inasmuch as the construction of a line of telegraph required a physical invasion of the State's property, the telegraph company could not by any proceeding against the State's lessee acquire a right to construct the telegraph line on the State's property, without making the State a party to such proceeding. In the consideration of the general question, Civil Code (1910) section 2811 was examined. This section provided that "upon making due compensation [any chartered telegraph company] shall have the right to construct, maintain, and operate telegraph or telephone lines, or both, through or over any lands of this State, and on, along, and upon the right of way and structures of any railroads, and, where necessary, under or over any private lands in this State, and to that end may have and exercise the right of eminent domain." It was held that the quoted clause did not give to a telegraph company a free license to construct its lines over the lands belonging to the State. The writer of the opinion said, arguendo: "This provision of the code places the land of the State upon the same plane as a railroad's right of way, and land of private owners, with respect to condemnation." Upon further reflection, we are of the opinion that this observation is too comprehensive. The code section contains no machinery for the exercise of any right of condemnation of the State's property. According to well-established canons of construction, the statute providing how condemnation proceedings shall be conducted when private property is taken or damaged for a public use can have no application to the State's property. "The State is not bound by the passage of a law unless named therein, or unless the words of the act should be so plain,

clear, and unmistakable as to leave no doubt as to the intention of the legislature." Civil Code (1910), § 3. The statutes providing for the procedure in the condemnation of land for public use do not provide that they shall apply to the State. Nor is there anything in the words of the act to imply that the legislature intended the statute to be applicable to the sovereign. The statute proceeds on the theory that the owner of the land or the estate therein sought to be subjected to a public use has full power to contract with reference to that use; and it is only when the land, easement, right of way, or interest necessary for public purposes can not be procured by contract that the amount of compensation may be assessed under condemnation proceedings. Civil Code (1910), §§ 5207, 5208. The Governor has no right to contract away the State's property at his pleasure or discretion. It is his duty to protect the property of the State, but he is not given any authority to sell the State's property, or to contract with reference thereto. He may provide for the defense of any suits in which the State has an interest. Civil Code, § 23. He can institute suits for the recovery of money or property belonging to the State. Civil Code, § 149. He has general supervision over all the property of the State, and can make provision for its protection. § 146. When any public property has become unserviceable he may order same sold. §§ 313, 314. But no power conferred upon the Governor by the code authorizes his consent to the sale of any property of the State, or any easement or interest in the State's property. The power to dispose of property belonging to the State is vested in the legislature. 36 Cyc. 870. And the Governor would have no right to usurp the legislative function in the matter of contracting away the State's property, or any interest therein. Again, the statute requires that the condemnor shall serve notice upon the owner of the property, as a preliminary step of condemnation. Civil Code (1910), § 5209. Unless the Governor was authorized or designated by the legislature to receive such notice he would be without authority of law to act upon it in the further progress of the condemnation proceedings. We are therefore clearly of the opinion that, notwithstanding the declaration in the Civil Code (1910), § 2811, that any chartered telegraph company may exercise the right of eminent domain over the lands of this State, the legislature has not enacted any statute making this declaration effective. The

code section is but the declaration of a bare privilege, with no procedure for claiming the benefit of it. Again, the State can not be sued, or subjected to an action of any kind, without special legislative authority. *Peeples* v. *Byrd,* 98 *Ga.* 688 (25 S. E. 677). While, strictly speaking, our condemnation procedure, by appointment of commissioners to appraise the land, is in the nature of an inquest to ascertain its value, and not a suit at law in the ordinary sense of the term, still, as the statute provides for an appeal from the award of assessors to the superior court, it then takes the form of a judicial proceeding between the condemnor and the condemnee, and the controversy is governed by the rules applicable to ordinary suits in that jurisdiction. Boom Company *v.* Patterson, 98 U. S. 403 (25 L. ed. 206). There is nothing in the condemnation statute looking towards the State's being a litigant in the courts, or taking any steps which will result in litigation. So that, on the whole, there is nothing in the condemnation statute that would indicate that such proceedings may be instituted against the State to condemn any of its property, or any interest or easement therein.

The net result of the former holding, that the State's lessee has no such interest in the land as is subject to condemnation, and the present holding, that the legislature has not provided for the condemnation of property belonging to the State, is that the court properly enjoined the condemnation proceedings of the telegraph company.

*Judgment affirmed on main bill of exceptions. Cross-bill of exceptions dismissed. All the Justices concur.*