## 26641. CROWDER v. DEPARTMENT OF STATE PARKS et al.

Argued September 15, 1971—Decided November 18, 1971—
Rehearing denied December 2, 1971.

*Swift, Page, Henkel & Chapman, Lee H. Henkel, Jr., Max R. McGlamry, Johnson, Harper, Daniel & Ward, Cullen M. Ward, Frank M. Eldridge,* for appellant.

*Arthur K. Bolton, Attorney General, Larry Ruskaup, Assistant Attorney General,* for appellees.

Grice, Justice. Involved in this appeal is an action seeking damages for personal injuries sustained by a patron of one of the parks owned, operated and controlled by the State of Georgia.

The action was filed on behalf of Stephen Charles Crowder, by his father as next friend, in the Superior Court of

Fulton County against the State of Georgia, the Department of State Parks of Georgia, its Director, and the Superintendent of Cloudland Canyon State Park.

The complaint, insofar as necessary to recite here, made the allegations which follow.

It averred that on a named date, the plaintiff, while lawfully a patron of the park, fell from a trail and suffered severe described personal injuries caused by stated acts of negligence and nuisance of the defendants; that a claim on his behalf was filed with the Claims Advisory Board of the State of Georgia but no action was taken thereon; that the claim was also presented to the General Assembly of Georgia with no action being taken by the committees thereof; that he has exhausted all available remedies; and that unless the court takes jurisdiction he will suffer great injury without compensation therefor in direct violation of specified provisions of the United States and Georgia Constitutions.

By amendment, the complaint also alleged that the State has deprived him of his constitutional rights by claiming that it is immune to suit because it possesses sovereign immunity which it has not waived; that this would unconstitutionally deprive him of life, liberty and property without due process of law and equal protection of law under designated provisions of the United States and Georgia Constitutions and that he is deprived of his rights under other stated constitutional provisions.

The amendment added another count to the complaint, which incorporated by reference allegations of the original complaint. It further alleged that the plaintiff's father had entered into a contract with the State of Georgia which had benefited financially therefrom, ratified it, and had breached its warranties of reasonable safety of the premises; and that the plaintiff as third-party beneficiary, had suffered consequential damages.

To the amended complaint the defendants interposed certain defenses, including failure of the complaint to state a claim upon which relief could be granted and sovereign immunity.

After a hearing the trial court entered an order which dismissed the action. It recited in essential part that "there is no statute authorizing the suit against the State or its Department of State Parks and for this reason the case is dismissed so far as it proceeds against the State of Georgia or the Department of State Parks of Georgia, or [the other two defendants], as the court is of the opinion that the applicable rule is that the State may not be sued without its consent, the court being of the opinion that this court is not authorized to alter or vary this rule of law."

From such order the plaintiff appealed to this court.

We ruled that his assertion that adherence to sovereign immunity violates and deprives him of certain constitutional rights actually involves mere application of unquestioned and unambiguous provisions of the Constitutions to a given state of facts, and for that reason the case did not come within the jurisdiction of this court under the Constitution. Accordingly, it was transferred to the Court of Appeals.

That court affirmed the trial court in *Crowder v. Department of State Parks,* 123 Ga. App. 793 (182 SE2d 512).

In doing so it held that it lacked power to abolish the doctrine of sovereign immunity, citing three of the numerous full bench decisions of this court asserting this doctrine.

It also ruled that "The Department of State Parks is a part of the State Division of Conservation within the Executive Department which is by statute exempt from suit (Ga. L. 1943, pp. 180, 184; *Code* § 43-114) and cannot be sued for injuries received by one who fell and injured himself while using its facilities."

We granted the plaintiff's application for certiorari.

As we view the issues now before us, the first ruling by the Court of Appeals, relating to sovereign immunity, is dispositive and therefore renders unnecessary determination of the second, pertaining to the statute as to the Department of State Parks.

1. This court has consistently held that a suit cannot be maintained against the State without its consent. See in

this connection *Southern Mining Co. v. Lowe,* 105 Ga. 352 (31 SE 191); *Western Union Telegraph Co. v. Western & A. R. Co.,* 142 Ga. 532 (83 SE 135); *Roberts v. Barwick,* 187 Ga. 691 (1 SE2d 713); *Barwick v. Roberts,* 192 Ga. 783 (16 SE2d 867); *Florida State Hospital for the Insane v. Durham Iron Co.,* 194 Ga. 350 (21 SE2d 216); *Eibel v. Forrester,* 194 Ga. 439 (22 SE2d 96); *Peters v. Boggs,* 217 Ga. 471 (123 SE2d 258); *Cardin v. Riegel Textile Corp.,* 219 Ga. 695 (135 SE2d 284); *Maddox v. Coogler,* 224 Ga. 806 (165 SE2d 158); and *James v. State,* 225 Ga. 809 (171 SE2d 533); besides others.

2. This immunity applies not only to the State but to the other defendants, to wit, the Department of State Parks of Georgia, its director, and the superintendent of the park involved here, since any judgment in favor of the plaintiff would have to be satisfied from assets of the State and the State itself would be bound by the judgment. See *Roberts v. Barwick,* 187 Ga. 691, 695, supra.

3. The plaintiff has requested that we review and overrule the full bench decisions of this court set forth in Division 1 and others recognizing this doctrine of sovereign immunity.

This request requires reference to some events preceding these decisions.

The doctrine of sovereign immunity was imbedded in the common law of England at the time of the American Revolution.

Georgia adopted this doctrine by virtue of its adoption of the common law of England by an Act of the General Assembly approved February 25, 1784 (Prince's 1837 Digest, p. 570; see also Cobb's 1851 Digest, p. 720).

In this connection, this court has held that "The common law of force prior to May 14, 1776, was adopted as the law of this State by the act of February 25, 1784, except where modified by statutes or not adjusted to the conditions or system of government existing here." *Harris v. Powers,* 129 Ga. 74 (2) (58 SE 1038, 12 AC 475). See also *Alexander v. Dean,* 157 Ga. 280, 283 (121 SE 238). We point out here that the doctrine of sovereign immunity has not been modi-

fied by statute.

It does not, we unhesitatingly hold, violate either the State or Federal Constitution.

This doctrine has continued in force in this State since 1784.

Whether it should now be abrogated is a matter of public policy which addresses itself to the legislative, not the judicial, branch of our State government.

What was declared in *Roberts v. Barwick,* 187 Ga. 691, 694, supra, applies with equal force here: "If this is a harsh rule, and if it does not have the approval of the people of the State, there is a definite way, a plain way, and a legal way, whereby it may be changed. This court has always held that the State could expressly consent to be sued. Therefore a very simple and brief enactment of the legislature giving this consent is all that is required in order to permit a suit against the State."

It would serve no useful purpose to recite here the various arguments for and against the doctrine of sovereign immunity.

To overrule the ten unanimous decisions referred to above which recognize the doctrine in this State requires the unanimous vote of this court. Such a vote is lacking. Therefore the decisions are, upon consideration, affirmed.

In our study of this case we are impressed by the fact that the legislatures of many states have provided for Tort Claims Acts to cope with this problem. None has yet been enacted in Georgia.

4. There was no valid waiver here of sovereign immunity.

As to this the plaintiff contends that the Department of State Parks has consented to be sued because of its entering into a contract charging a rental on its cabin in the park in question.

This contention is not valid.

There was no statutory consent for the bringing of this suit, as is required. See, *Western Union Telegraph Co. v. Western & A. R. Co.,* 142 Ga. 532, 535, supra; *Cannon v. Montgomery,* 184 Ga. 588, 591 (192 SE 206); Anno. 160

ALR 334; 15 ALR2d 231; *Peters v. Boggs,* 217 Ga. 471, supra; *Maddox v. Coogler,* 224 Ga. 806, supra; and *James v. State,* 225 Ga. 809, supra.

5. We therefore hold that the complaint fails to set forth a claim for relief, either in tort, contract or for nuisance. In view of the full bench decisions referred to above and the absence of any legislative consent for the suit, it appears, beyond any doubt, from the complaint that the plaintiff can prove no facts in support of his claim which would entitle him to relief, notwithstanding the liberalized notice pleading of the Civil Practice Act (*Code Ann.* § 81A-108 (a)).

*Judgment affirmed. All the Justices concur, except Nichols, Felton and Hawes, JJ., who dissent.*

NICHOLS, Justice, dissenting. I dissent from the holding as to sovereign immunity. While I recognize the numerous full bench decisions of this court, some of which are cited in the majority opinion, dealing with sovereign immunity, the conduct of the legislative and executive branches of government has long since waived such immunity insofar as tort claims are concerned.

In 1952 the General Assembly enacted a law providing for hearings on Compensation Resolutions and Bills. Ga. L. 1952, p. 169.

In 1963 the 1952 Act was repealed and the Claims Advisory Board was created (Ga. L. 1963, p. 624; *Code Ann.* § 47-504, et seq.). This latter Act, subsequently amended, provides for a procedure whereby claims against the State may be investigated and a recommendation made to the General Assembly. The General Assembly is not bound by such recommendation which the law provides is merely "advisory in nature."

In *Trice v. Wilson,* 113 Ga. App. 715 (149 SE2d 530), I, as a Judge of the Court of Appeals, concurred in an opinion holding that the General Assembly had not waived the sovereign immunity, and I agree today that it has not expressly waived such immunity. Under the decision in *National Distributing Co. v. Oxford,* 103 Ga. App. 72 (118 SE2d 274), a decision which was controlling upon the Court

of Appeals at that time, such conclusion was inescapable.

The Supreme Court is not bound by such decisions and no decision of this court has construed the effect of the 1952 and 1963 Acts relating to the payment of claims by the General Assembly.

Such Acts have the effect of expressly authorizing the General Assembly to make what was held in *Trice v. Wilson,* supra, to be a gratuity. No attack has been made as to the constitutionality of such Acts and no such question is now presented. The sole question is the effect of such Acts and the effect of the numerous resolutions passed by the General Assembly and approved by the executive branch of government upon the doctrine of sovereign immunity. A reference to the Tabular Indices of the volumes of the Georgia Laws since 1952 will show that the General Assembly has consistently granted gratuities because of the torts of State employees acting within the scope of their employment.

Since the State is without authority to grant gratuities (Article VII, Sec. I, Par. II of the Constitution; *Code Ann.* § 2-5402), the effect of such payments, if legal, must be something else. For nineteen years the General Assembly has, under the above cited Acts, made payments to persons suffering injuries from the torts of its employees. For nineteen years there has been no equal protection of the citizens since even the opinion of the investigating body has been advisory only. For nineteen years only injured persons who could obtain the aid of a member of the General Assembly could possibly obtain relief since only members of the General Assembly could introduce a compensation resolution. For nineteen years the legislative and executive branches of State government have granted gratuities to some citizens while not providing equal protection to other citizens similarly situated in violation of Article I, Sec. I, Par. II of the Constitution (*Code Ann.* § 2-102), which provides that "Protection to person and property is the paramount duty of government, and shall be impartial and complete." This provision of the Constitution provides for

equal protection of all citizens under same or similar circumstances. See *Baugh v. City of LaGrange,* 161 Ga. 80 (130 SE 69). While it has been held that discrimination in grant of favors by government is not controlled by this provision of the Constitution (see *Schlesinger v. City of Atlanta,* 161 Ga. 148 (129 SE 861)), this exception has no application to the grant of damages for injuries to some citizens and the denial of such damages to other citizens under similar circumstances.

The effect of the creation of the Claims Advisory Board and its predecessor under the 1952 Act and the enactment of hundreds of Compensation Resolutions was to create a waiver of sovereign immunity as to claims by those citizens injured by the tortious acts of State employees acting within the scope of their employment who were fortunate enough to be able to obtain the aid of a member of the General Assembly to prosecute their claim. This waiver of sovereign immunity under the mandate of the Constitution must apply equally to all citizens and to apply equally to all citizens, all citizens must be entitled to redress on the same conditions. This being so, I believe that until such time as the General Assembly sees fit to establish such a procedure, any citizen injured by the acts of the State through its agents is entitled to pursue his relief in the courts of this State. What I would hold in nowise conflicts with the full bench decisions cited in the majority opinion.

The contention has been made that while the 1952 and 1963 Acts are patently unconstitutional, that no such question has been presented in the instant case and even if raised, the proper procedure would be to declare such Acts unconstitutional not to extend the benefits created by such Acts from the few to all citizens.

If an attack was made upon such Acts, it would, under prior case law, be held that the person attacking such Act had no standing to attack the same since it would not be an infringement upon his right of person or property (see *Crumley v. Head,* 225 Ga. 246 (3) (167 SE2d 651), and citations), for even if declared unconstitutional he would not be

entitled to recover for damages resulting from the torts of State employees.

Not only is it the duty of this court to apply the Constitutional mandate, to wit: "Protection to person and property is the paramount duty of government and shall be impartial and complete," but we have the provision of the Code that: "For every right there shall be a remedy, and every court having jurisdiction of the one may, if necessary, frame the other." *Code* § 3-105. The General Assembly in providing a method to compensate some citizens for the torts of the State's employees acting within the scope of their employment, created the right for all citizens in the same or similar circumstances and the Supreme Court not only has the right but the duty to frame the remedy for all citizens in the same or similar circumstances.

FELTON, Justice, dissenting. I respectfully dissent from the two propositions of law laid down in the majority opinion, (1) that the question of sovereign immunity is now exclusively a legislative function because of the Act of 1784, and, (2) that the question cannot be resolved by this court, even though this court has never passed on the question (an exception in said Act) whether the common law doctrine of sovereign immunity is "adjusted to the conditions or system of government existing here." The Constitution of Georgia, *Code Ann.* § 2-8003 reads as follows: "Third in authority—Third: In subordination to the foregoing: All laws now of force in this State, not inconsistent with this Constitution shall remain in force until the same are modified or repealed by the General Assembly."

The doctrine of sovereign immunity insofar as the State of Georgia is concerned, is of purely common law origin since neither the Constitution of Georgia nor any statute prohibits an individual or other entity from suing the State without its consent. This court has made the law that such is the case without considering and deciding whether the State can be sued without its consent in tort cases, and possibly others, comported with written constitutional guarantees of due process of law and equal protection of the law.

This court cannot escape its duty and responsibility with respect to such questions by ignoring them. In such circumstances this court still has the power, duty and authority to alter court-made common law rules by determining whether strictly court-made common law rules, not altered by statute or constitution, may be adjusted to different government and different social needs, different from those existing at common law. So I submit that this court now has the jurisdiction and power to construe the entire Act of 1784 and *Code Ann.* § 2-8003—and to rule that the common law rule of sovereign immunity should not be applied to cases of tort liability in cases of negligent conduct of servants and agents not acting in governmental functions traditionally making the state or governmental agency immune from suit from a public policy standpoint, and in cases where no vested rights have accrued to prevent the abolition of immunization and where the rule of sovereign immunity "may not reasonably be supposed to have determined the conduct of the litigants, and particularly when in its origin it was the product of institutions or conditions which have gained a new significance or development with the progress of the years." Cardozo, The Nature of the Judicial Process, p. 151. I submit that not only is the change in the law demanded by the progress of humanity but by the specific bill of rights in our own written Constitution. The old rule simply won't stand up under such requirements and we should discard sovereign immunity in this State and obey the mandates of our Constitution until the legislature proposes an amendment to the Constitution preventing a State from being sued without its consent or regulating the procedure for such suits and limiting the recovery or providing for the taking out of insurance against part or all of the liability. The provision for the old rule of sovereign immunity should only come from an amendment to the Constitution, ratified by the people of Georgia, who, after all, *are* the State of Georgia. The rule should not come from the shadows of antiquity where it was first thought that the king could do no wrong because

the king was held in such high esteem that he was thought to be incapable of wrong, but when the facts of life became a bit clearer, revised their opinion to the effect that a claim that the king could do no wrong was more conducive to longevity than any other position.

I think that this court, by a majority vote may dispose of sovereign immunity in the limited field aforesaid. As the majority rules, the torch is cast to the legislature which can be no longer in doubt about the fact that this court cannot even touch the question, and that it alone has the sole responsibility of protecting the constitutional rights of the people of Georgia, or leaving the question to the ancient fear that one must yield to absolute monarchial power or go to his death.

I do not mean that four members of this court can overrule a full-bench decision of this court which has construed the *entire Act of 1784. No full bench decision* has construed the *entire Act.* Not one has even mentioned whether the Act violated the due process and equal protection clauses of the State Constitution. I say that a majority of this court can now interpret that part of the Act *which has not been construed* and abolish sovereign immunity to the extent that I have above suggested.

HAWES, Justice, dissenting. I wish the record to show that I heartily concur in the dissents of Justice Nichols and Justice Felton, with the following observations: The rationale of these dissents offers the majority of this court an opportunity to discard the "straight-jacket" of full bench decisions, which were born of another era. The doctrine of sovereign immunity was born in the common law of England on the thesis that the king could do no wrong; but we are not ruled by a king, we are a government "of the people, by the people, and for the people," and it is called a republic.

What constitutes a State? It is not our cities or our farms; it is not our ports, mountains, or plains, but people—people constitute a State. I feel that the State and its subdivisions created by the legislature should not be al-

lowed to hide behind this cloak of immunity. State government is big business, the largest employer of its people. The State, like other businesses, has an obligation and a duty to protect the public from the negligence of its servants and agents. The State carries insurance to protect property owned by the State; why not coverage to protect life and limb of its citizens from accidents caused by the negligence of its servants or agents? The majority opinion states, and I quote, "Whether it should now be abrogated [speaking of sovereign immunity] is a matter of public policy which addresses itself to the legislative, not to the judicial, branch of our government."

With this statement, I cannot agree. I feel that we do have a judicial responsibility to decide the issues. That is the purpose of these dissents. But, since the majority says this question is a matter of public policy which addresses itself to the legislature, since they are the representatives of these unprotected people, perhaps the legislature, in its wisdom, can pick up where these dissents leave off and correct this long overdue injustice to their constituents.

I like to think the time is ripe for Georgia to join the other States of the Union which have abandoned this unfair and obsolete doctrine.