## 49430. AZIZI v. BOARD OF REGENTS OF THE UNIVERSITY SYSTEM et al.

WEBB, Judge.

The essential facts as stated in the order of the trial court are:

"This action was filed on behalf of Naheed Azizi [an immigrant from Kabul, Afghanistan] through her next friend Omar R. Azizi, and by her father Masuda Rahim Azizi, individually. The original complaint alleges that Naheed Azizi was admitted to the Eugene Talmadge Memorial Hospital, operated in conjunction with the Medical College of Georgia, on January 30, 1972, and that she remained there until March 10, 1972, with a

diagnosis of acute pneumonia. It was further alleged that during her hospitalization she received an injection in the region of the left sciatic nerve which directly and proximately caused sciatic paralysis and permanently disabled her. Named as defendants were 'The Board of Regents of the University System of Georgia' and 'The Regents of the University of Georgia.' Damages were sought in the amount of $1,000,000 on behalf of Naheed Azizi (i. e. Count 1) and $100,000 for her father for medical expenses and lost services (i. e. Count 2).

"By an amendment adding two additional counts to the complaint plaintiffs assert a theory of recovery based upon the existence of a contract between plaintiffs and defendants for certain medical services and attention, coupled with a breach of warranties implied by the contract (i. e. Count 3), and allege a cause of action against Henry G. Mealing, Jr., M. D., individually. It was alleged that Dr. Mealing could be served by second original at the Department of Medicine, Division of Rheumatology at the Medical College of Georgia, located in Augusta, Richmond County, Georgia. It was alleged that Dr. Mealing had been negligent in the prescription of the injected drug, gentamycin, and further negligent in the supervision of its administration (i. e. Count 4)."

The trial court sustained and granted the motions of defendants to dismiss, and denied plaintiffs' motion to dismiss or strike, holding that since the suit had not been consented to by the state it was barred by the "sovereign immunity" doctrine insofar as the Board of Regents of the University System of Georgia was concerned, and that the failure of the case as to these "resident" state department defendants was fatal to the maintenance of the action in Fulton County against Dr. Mealing, a "nonresident" defendant. Plaintiffs appeal from this order.

1. Plaintiffs urge that this doctrine of sovereign immunity be swept away by judicial decree, and they present a well documented all-out attack on the doctrine. Indeed their able counsel offer in support of their contention a logical pedagogic dissertation against sovereign immunity. And in the words of King Agrippa of old, "Almost thou persuadest me . . ." That cannot be

by judicial order, however, even were we so persuaded.

The doctrine of sovereign immunity is that "the king could not be sued in his own courts without his consent." Mathis, The Eleventh Amendment: Adoption and Interpretation, 2 Ga. L. Rev. 207-8. Its existence in the law of England since Edward the First is recognized. See United States v. Lee, 106 U. S. 196, 205 (1 SC 240, 27 LE 171); *Roberts v. Barwick,* 187 Ga. 691, 694 (1 SE2d 713); *Trice v. Wilson,* 113 Ga. App. 715, 722 (149 SE2d 530). Rather fully developed in England prior to the American Revolution, it was adopted by the American states along with the remainder of the English law. Georgia adopted the doctrine of sovereign immunity as a part of its inherent law upon adoption of the common law of England by an Act of the General Assembly approved February 25, 1784 (Prince's 1837 Digest, p. 570; Cobb's 1851 Digest, pp. 720-721).

The Constitutions of 1865, 1868, and 1877[1] re-iterated the adoption of the common law and statutory law inborn from England on attainment of independence. Our present Constitution in Art. XII, Sec. I, Par. III (Code Ann. § 2-8003), setting forth the order of authority of our laws provides immediately after the Federal and State Constitutions: "Third in authority.—Third: In sub-ordination to the foregoing: All laws now of force in this state, not inconsistent with this Constitution shall remain of force *until the same are modified or repealed by the General Assembly."* (Emphasis supplied.)

This court is without authority to override the Constitution. The doctrine of sovereign immunity has continued in force in this state since 1784, and it has not been modified by statute except in certain qualified instances not relevant here. Any change in this common law doctrine must be by *legislative* and not by judicial action. See, e. g., *Crowder v. Department of State Parks,* 228 Ga. 436, 439 (185 SE2d 908), *cert. denied,* 406 U. S. 914; *Roberts v. Barwick,* supra; *Trice v. Wilson,* supra.

True it is that many states have by legislative Act

---

[1] Article V, Sec. V, 1865; Art. XI, Par. 3, 1868; Art. XII, Par. III, 1877.

provided for claims courts to handle claims against the states, and both the Supreme Court and this court have suggested that such a procedure might be appropriate. See *Roberts v. Barwick,* supra; *Crowder v. Department of State Parks,* supra; *Trice v. Wilson,* supra. But the writer sits today not as a member of the General Assembly. Pertinent indeed is a proposed amendment to the Constitution, Resolution No. 68, passed by the General Assembly in 1973 when the writer was a member of the Senate, by which, if approved by the electorate in November, 1974, the General Assembly would be "authorized to create and establish a State Court of Claims with jurisdiction to try and dispose of cases involving claims for injury or damage, except the taking of private property for public purposes, against the State of Georgia, its agencies or political subdivisions, as the General Assembly may provide by law." (Ga. L. 1973, p. 1489). It is interesting to note that there was no dissenting vote in the Senate. (Senate Journal 1973, p. 1867).

Even that proposed amendment to the Constitution provides: "Nothing contained herein shall constitute a waiver of the immunity of the State from suit, but such sovereign immunity is expressly reserved except to the extent of any waiver of immunity provided in this Constitution and such waiver or qualification of immunity as is now or may hereafter be provided by act of the General Assembly."

Until and unless approved by the voters, and implemented by legislative Act, however, it is not a modification of the doctrine of sovereign immunity.

2. Equally true, this court is without authority to override the decisions of the Supreme Court of Georgia. There are no less than ten unanimous decisions of the Supreme Court holding that a suit cannot be maintained against the state without its consent. *Southern Mining Co. v. Lowe,* 105 Ga. 352 (31 SE 191); *Western Union Telegraph Co. v. Western &c. Co.,* 142 Ga. 532 (83 SE 135); *Roberts v. Barwick,* 187 Ga. 691 surpa; *Barwick v. Roberts,* 192 Ga. 783 (16 SE2d 867); *Florida State Hospital for the Insane v. Durham Iron Co.,* 194 Ga. 350 (21 SE2d 216; *Eibel v. Forrester,* 194 Ga. 439 (22 SE2d 96); *Peters v. Boggs,* 217 Ga. 471 (123 SE2d 258); *Cardin v. Riegel*

*Textile Corp.,* 219 Ga. 695 (135 SE2d 284); *Maddox v. Coogler,* 224 Ga. 806 (165 SE2d 158); and *James v. State,* 225 Ga. 809 (171 SE2d 533).

3. There is no merit in appellants' contention that the doctrine of sovereign immunity violates the "due process" and "equal protection" clauses of the Federal and State Constitutions. See *Crowder v. Department of State Parks,* supra, and Palmer v. Ohio, 248 U. S. 32 (39 SC 16, 63 LE 108). In the *Crowder* case, Mr. Justice Grice (now Chief Justice) speaking for the majority, said: "It does not, we unhesitatingly hold, violate either the State or Federal Constitution." In the Palmer case, involving a property damage claim against the State of Ohio, the court said (p. 34): "The right of individuals to sue a state, in either a federal or a state court, cannot be derived from the Constitution or laws of the United States. It can come only from the consent of the state. [Cits.] Whether Ohio gave the required consent . . . is a question of local state law, as to which the decision of the state Supreme Court is controlling with this court, no federal right being involved."

4. Appellants contend that the Board of Regents is a public corporation capable of suing and being sued, contending that the Regents and Board of Regents are two separate entities, neither of which is a state agency to which the sovereign immunity doctrine is applicable.

By Act in 1935 the General Assembly defined the status of the Regents of the University of Georgia and the members of the Board of Regents as follows: "That the corporation created under section 45 of the Act approved August 25, 1931, as embodied in title 32, section 32-101, of the Code of Georgia of 1933, and known as 'Regents of the University System of Georgia,' is hereby declared to be a governmental agency of the State of Georgia, and all property held by said corporation under said Act of August 25, 1931, as embodied in Title 32 of the Code of Georgia of 1933 is hereby declared to be the property of the State of Georgia, and subject to all the limitations and restrictions imposed upon other property of the State of Georgia by the Constitution and laws of this State. The members of the Board of Regents of the University System of Georgia, as provided for by said Act, are hereby

declared to be public officers of the State of Georgia and subject, in all their actions as such, to all the limitations and restrictions imposed by the Constitution and laws of this State upon other public officers." (Ga. L. 1935, pp. 171, 172).

The Supreme Court, in *Ramsey v. Hamilton,* 181 Ga. 365, 378 (182 SE 392) said: "It is a matter of current history that the act of 1935 from which we have quoted[2] was adopted by the General Assembly and approved by the Governor for the purpose of changing the status and relation which the Regents of the University of Georgia sustained to the State under the previous law, as pointed out in the decision of this court in *State v. Regents,* supra, [179 Ga. 210, 175 SE 567] and since the passage of that act it is apparent that the Regents of the University System of Georgia is now, and was at the time of the filing of the present suit, a governmental agency of the State in charge of property of which the title is in the State. It necessarily follows that *a suit to restrain and enjoin that body, as prayed by the petitioners, is in effect a suit against the State, which cannot be maintained against its will."* (Emphasis supplied).

There is but one entity in which are vested the government, control and management of the University System of Georgia. If there existed confusion as to "Regents" and "Board of Regents," as it seems to exist in the minds of appellants and their counsel, a reading of Art. VIII, Sec. IV, Par. I (Code Ann. § 2-6701) of the Constitution should remove it. This paragraph reads in part: "There shall be a Board of Regents of the University System of Georgia and . . . all of its institutions in said system shall be vested in said Board of Regents of the University System of Georgia . . . The said Board of Regents of the University System of Georgia shall have the powers and duties as provided by law existing at the time of the adoption of this Constitution, together with such further powers and duties as may be hereafter provided by law."

Further, as was held by this court in *Perry v. Regents of the University System,* 127 Ga. App. 42, 43 (192 SE2d

---

[2] Act quoted above, Ga. L. 1935, pp. 171, 172.

518), "It is also clear that the Board of Regents is an agency of the State with sovereign immunity from tort liability. It performs a governmental function (i. e., the education of its citizens) and is supported by State funds."

5. Appellants added to their complaint a count in contract, and contend that sovereign immunity is thus evaded. Exactly the same attempt and argument were made in *Crowder v. Department of State Parks,* supra. The court said: "This contention is not valid. There was no *statutory* consent for the bringing of this suit as is required [citing numerous decisions]. We therefore hold that *the complaint fails to set a claim for relief, either in tort, contract or for nuisance.* In view of the full bench decisions referred to above and the absence of any *legislative* consent for the suit, it appears, beyond any doubt, from the complaint that the plaintiff can prove no facts in support of his claim which would entitle him to relief . . ."

And in *Western Union Telegraph Company v. Western & Atlantic Railroad Company,* 142 Ga. 532, 535 (83 SE 135): ". . . the State cannot be sued, or subjected to *an action of any kind,* without special legislative authority." (Emphasis supplied.)

6. The contention that the operation of a hospital in conjunction with the medical college is not a "governmental function" is without merit. Public education is a governmental function and the Medical College of Georgia is an essential unit of this function. A medical college without a hospital in conjunction therewith would be like a buggy without a horse, or in more modern parlance, an airport without aircraft. Furthermore, "This State has the sovereign right, as a State, to engage in any activity not prohibited by the State or national constitution. The determination of what governmental functions the State shall undertake with these sole limitations is made by the legislative department of the State government . . . The immunity thus enjoyed by the State is in no wise lifted because of the question involved." *Roberts v. Barwick,* supra, p. 697.

7. Jurisdiction over Dr. Henry G. Mealing, Jr. as a defendant, who contended that as a nonresident of Fulton County he was not amenable to service of process or suit

therein, was dependent upon existence of a good cause of action against the resident defendants. That failing, there was no jurisdiction of Dr. Mealing in Fulton County. See *Martin v. Approved Bancredit Corporation,* 224 Ga. 550, 551 (163 SE2d 885); *Stroud v. Doolittle,* 213 Ga. 32 (96 SE2d 876); *Richards & Associates v. Studstill,* 212 Ga. 375, 377 (93 SE2d 3); *Register v. Sanders,* 103 Ga. App. 368 (119 SE2d 294).

*Judgment affirmed. Eberhardt, P. J., and Pannell, P. J., concur.*

ARGUED MAY 30, 1974 — DECIDED JUNE 24, 1974 — REHEARING DENIED JULY 12, 1974 —

*White & Jewett, C. Lawrence Jewett,* for appellant.
*Arthur K. Bolton, Attorney General, Robert S. Stubbs, II, Executive Assistant Attorney General, Don A. Langham, Alfred L. Evans, Jr., Assistant Attorneys General,* for appellees.