**A. J. KELLOS CONSTRUCTION CO., INC., Plaintiff,**

v.

**BALBOA INSURANCE COMPANY and Celotex Corporation, Defendant,**

v.

**ROOFING SPECIALTIES, INC. et al., Third-Party Defendants.**

**Civ. A. No. 177–194.**

United States District Court, S. D. Georgia, Augusta Division.

March 12, 1980.

See also, D.C., 86 F.R.D. 544.

Jay M. Sawilowsky, C. James Jessee, Jr. L/C Jessee, Ritchie & Duncan, P. C., Atlanta, Ga., for plaintiff.

DeWitte Thompson, Atlanta, Ga., James T. Wilson, Augusta, Ga., James A. Eichelberger, Daniel A. Angelo, Greene, Buckley, DeRieux & Jones, Atlanta, Ga., for defendant Celotex.

Lamar W. Davis, Jr., Savannah, Ga., for third-party defendants Roofing Specialties, Inc., Colin Frances Martin, Sarah Inez Martin.

J. Samuel Choate, Jr., Augusta, Ga., for third-party defendants Denson Harris Fraser and Deborah Wheeler Fraser.

## ORDER ON MOTION TO DISMISS OF DEFENDANT CELOTEX

BOWEN, District Judge.

Plaintiff, A. J. Kellos Construction Co. [Kellos], was the general contractor for the

construction of the Research and Education Building at the Medical College of Georgia in Augusta, Georgia. Kellos entered into a subcontract with Roofing Specialties, Inc., for the construction of the roof of this project. A performance bond was executed by Defendant, Balboa Insurance Co. [Balboa], in favor of plaintiff that Roofing Specialties, Inc. would promptly and faithfully perform its contract. The roofing system was subsequently condemned by the architect for the state of Georgia, the building's owner.

Kellos brought this action against Balboa on the performance bond, alleging that Roofing Specialties, Inc. defaulted under its contract. Thereafter, Balboa instituted a third party action against indemnitors under the bond executed in favor of plaintiff. By amended complaint, Celotex Corporation [Celotex], the supplier of the roofing material, was added as a party defendant.

Currently pending is defendant Celotex's motion to dismiss. The first of several contentions raised by this motion challenges the subject matter jurisdiction of the Court pursuant to Fed.R.Civ.P. 12(b)(1).

I

The basis for subject matter jurisdiction of this action is diversity of citizenship. 28 U.S.C. § 1332(a) (1976). Both Kellos and Roofing Specialties, Inc., as Georgia corporations with their principal place of business in Georgia, are citizens of the state of Georgia for purposes of diversity. Balboa, as a California corporation with its principal place of business in California, is a citizen of California for purposes of diversity. 28

U.S.C. § 1332(c) (1976). Ostensibly, given this statutory definition of corporate citizenship, diversity exists between Kellos and Balboa. Yet Celotex argues that under the proviso of section 1332(c), Balboa's citizenship is deemed that of Roofing Specialties, Inc. thereby defeating diversity of citizenship.

> Section 1332(c) provides in pertinent part: [t]hat in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business.

Celotex contends that the bond executed by Balboa in favor of Kellos is a "contract of liability insurance," and that Kellos' suit is a "direct action" to which Roofing Specialties, Inc., "the insured," has not been joined as a party defendant. Thus, it is claimed that under the statutory fiction of the section 1332(c) proviso, Balboa and Kellos are citizens of the same state.

■ The proviso was originally enacted to relieve congestion in the federal courts caused by direct action statutes in Louisiana and Wisconsin and to prevent duplication of the problem.[1] This framework of enactment, however, has not circumscribed judicial application of section 1332(c); courts have liberally construed the statute to effect the legislative intent that nominally diverse actions be denied a federal fo-

---

1. *See* [1964] *U.S.Code Cong. & Admin.News,* pp. 2778–85. The legislative history of the proviso of section 1332(c) has been extensively discussed elsewhere. *See Williams v. Liberty Mutual Ins. Co.,* 468 F.2d 1207 (5th Cir. 1972) (term insured in § 1332(c) held to apply to action by omnibus insured to defeat diversity); *Henderson v. Selective Ins. Co.,* 369 F.2d 143, 149 (6th Cir. 1966) (proviso held not to apply to action by judgment creditors against liability insurer); *White v. United States Fidelity & Guaranty Co.,* 356 F.2d 746, 747 (1st Cir. 1966) (holding § 1332(c) inapplicable to declaratory judgment action); *Lank v. Federal Ins. Co.,* 309 F.Supp. 349, 351 (D.Del.1970) (suit by receiver against insurance company held not a direct action under § 1332(c)); *Inman v. MFA Mutual Ins. Co.,* 264 F.Supp. 727, 728 (E.D.Ark.1967) (holding the proviso inapplicable to action by guardian of omnibus insured against own insurance carrier); *Carvin v. Standard Accident Ins. Co.,* 253 F.Supp. 232 (E.D.Tenn.1966) (proviso of § 1332(c) held inapplicable to action by one claiming to be an insured under an automobile liability insurance policy to recover upon policy for benefit of others who had obtained judgment against him).

rum. *See O. M. Greene Livestock Co. v. Azalea Meats, Inc.*, 516 F.2d 509 (5th Cir. 1975); *McMurry v. Prudential Property & Cas. Ins.*, 458 F.Supp. 209 (E.D.Mich.1978). Yet this statutory construction does not negate the three elements necessary to invoke the proviso: (1) a policy or contract of liability insurance; (2) a direct action against an insurer; and (3) the insured is not a party-defendant. 458 F.Supp. at 210–11. The third factor is not in issue.

■ A contract of liability insurance is defined as a contract that indemnifies against the condition of becoming liable. *Vines v. United States Fidelity & Guaranty Co.*, 267 F.Supp. 436, 437 (E.D.Tenn.1967). The appropriate inquiry, therefore, is whether a performance bond is a contract that indemnifies against the condition of becoming liable.

■ Generally, a suretyship is a tripartite agreement between the surety, the principal, and the creditor "where one person has undertaken an obligation and another person is also under an obligation or other duty to the obligee, who is entitled to but one performance, and as between the two who are bound, one rather than the other should perform." [2] *Restatement of the Law of Security* § 82, at 228 (1941). The surety in a performance bond guarantees that the principal will perform the contract, and if the principal defaults, the surety shall pay damages in the amount of the bond. 17 *Am.Jur.* § 1, at 192 (1964).

■ A contract of indemnity ordinarily contemplates two parties—the indemnitor and the indemnitee. The relationship is defined as "one where the promisor agrees to save a promisee harmless from some loss, irrespective of the liability of a third person." *Restatement, Security* § 82, comment 1, at 236; *see generally Lee Way Motor Freight v. Yellow Transit Lines, Inc.*, 251 F.2d 97 (10th Cir. 1957). When the contract indemnifies against liability, the indemnitor is normally bound to pay an amount of money to insulate the indemnitee from harm or injury.

■ Indemnity differs from suretyship in several respects beyond the number of parties necessary to form the relationship. Suretyship is a relationship collateral to a main contract or transaction between the principal and the creditor. *See Madison County Farmers Ass'n v. American Employers Ins. Co.*, 209 F.2d 581 (8th Cir. 1954); *Restatement, Security* § 82, comments b through e, at 229. Indemnity, in contrast is an original undertaking. *See* 41 *Am.Jur.* § 4, at 689. Furthermore, as succinctly stated by Judge Merrill in *Atterbury v. Carpenter*, 321 F.2d 921, 923–24 (9th Cir. 1963):

> "The indemnitor's promise is not conditioned upon another's nonperformance of duty." Arant on Suretyship, § 17 (1931). *Liability insurance is the typical example.*

The surety, however, promises to protect the promisee only in case a third party, who is primarily liable on the obligation, fails to perform. The creditor-promisee is entitled to compensation from the surety only in the event of default by the principal debtor. [Emphasis added].

2. A more expansive definition of suretyship was given by the Eighth Circuit Court of Appeals in *Madison County Farmers Ass'n v. American Employers' Ins. Co.*, 209 F.2d 581, 585 (8th Cir. 1954):

> Suretyship may be defined as a contractual relation whereby one person engages to be answerable for the debt or default of another. * * * The terms of the contract of which the surety promises performance must be read into his own contract. The principal's contract and the bond or undertaking of the surety are to be construed together as one instrument. * * * The suretyship contract must be express, as the surety's prom-

> ise will never be enlarged to cover the implications growing out of the language employed. * · * * A surety's liability is always measured by the express terms of his covenant, which is contained in the obligations of his principal as defined in the main contract and any applicable statute, and in the conditions of the bond. The right of recovery against the surety does not extend beyond that against the principal.

*See generally In re Yale Express System, Inc. [Boston Ins. Co. v. Nogg]*, 362 F.2d 111 (2d Cir. 1966); *Wurlitzer Co. v. Oliver*, 334 F.Supp. 1009 (W.D.Pa.1971).

Thus, a central point of distinction is that the indemnitor's obligation arises upon the occurrence of a stated contingency irrespective of a third party's default—"whether or not the indemnitee has any recourse against a third person." *Restatement, Security* § 82, comment 1, at 236.

■ This last differential is evident in cases applying the section 1332(c) proviso. A review of those decisions reveals that, in conformance with the *Atterbury* court's denomination of liability insurance, *supra*, the liability or obligation of the defendant which was the subject matter of the complaint was not dependent upon a third party's nonperformance of duty. For example, the proviso has been applied to defeat diversity jurisdiction in an action by an employee against his employer's workman's compensation carrier. *Hernandez v. Travelers Ins. Co.*, 489 F.2d 721 (5th Cir. 1974); *Lane v. Insurance Co. of North Am.*, 268 F.Supp. 345 (E.D.Tenn.1967); *Vines v. United States Fidelity & Guaranty Co.*, 267 F.Supp. 436 (E.D.Tenn.1967). It is fairly uniformly recognized that recovery by the injured employee is not conditioned upon the fault of the employer. *See Black v. Texas Employers Ins. Ass'n*, 326 F.2d 603 (10th Cir. 1964); *Massey v. Thiokol Chemical Corp.*, 368 F.Supp. 668 (S.D.Ga.1973); *McKenney v. Capitol Crane Corp.*, 321 F.Supp. 880 (D.D.C.1971).

Consonant with suretyship, Balboa's obligation under the bond executed in favor of Kellos was contingent on the default of the principal Roofing Specialties, Inc.[3] —an undertaking distinct from indemnity. The relationship, therefore may not properly be characterized as a contract that indemnifies against the condition of becoming liable. *Vines v. United States Fidelity & Guaranty Co., supra.* Thus, in the terminology of the section 1332(c) proviso, the bond may not be defined as a contract of liability insurance.[4] This conclusion forecloses application of the proviso and renders analysis of the direct action requirement unnecessary.

## II

The complaint against Celotex alleges that tests performed by the state of Georgia, the building's owner, showed that the roofing material delivered by Celotex did not conform with the material designated and described in the contract between Kellos and Roofing Specialties, Inc. Celotex argues in its motion to dismiss that the pivotal factual issue raised by Kellos' complaint is whether the state was justified in condemning the building—whether the roofing material, contrary to the condemnation, met the contract specifications. It is claimed that, given the centrality of this issue, the state of Georgia is an indispensable party to this action under Fed.R.Civ.P. 19(b).

■ Consideration of joinder under Rule 19 entails a twofold inquiry: (1) whether the party should be joined if feasible; and (2) whether, if joinder is not possible, the action should be dismissed. *See Occidental Petroleum Corp. v. Buttes Gas & Oil Co.*, 331 F.Supp. 92, 105 (C.D.Cal.1971). Rule 19(a) mandates joinder if nonjoinder:

First, . . . would prevent complete relief from being accorded among those who are parties to the action or, second,

---

**3.** The bond was made a part of the pleadings. It provides in pertinent part:

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the said Principal shall fully indemnify the Contractor from and against any failure on his part faithfully to perform the obligations imposed upon him under the terms of said contract free and clear of all liens arising out of claims for labor and material entering into the work, and if the said Principal shall pay all persons who shall have furnished labor or material directly to the Principal for use in the prosecution of the aforesaid work, each of which

said persons shall have a direct right of action on this instrument in his own name and for his own benefit, subject, however, to the Contractor's priority, then this obligation to be void, otherwise to remain in full force and effect.

**4.** The Court recognizes that performance bonds have been considered contracts of insurance. *See* 43 *Am.Jur.* § 6, at 71. The purpose of *this* description, however, has been to provide a rule of construction. *See American State Bank v. United States Fidelity & Guaranty Co.*, 331 F.2d 479 (7th Cir. 1964).

the absentee "claims an interest relating to the subject matter of the action and is so situated" that his absence from the action will have a prejudicial effect on his ability to protect his own interest or will "leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations."

7 *C. Wright & A. Miller, Federal Practice and Procedure* § 1604, at 33 (1972). If any one of these criteria is met, the party is necessary to the action. *See Jones Knitting Corp. v. A. M. Pullen & Co.*, 50 F.R.D. 311 (S.D.N.Y.1970).

■ Rule 19(a)(1) contemplates consummate rather than partial or hollow relief to parties before the court, as well as the preclusion of multiple lawsuits on the same subject matter. *Advisory Committee's Note*, 39 F.R.D. 89, 91 (1966). As between those already parties in this action, Kellos may obtain complete relief on its claim for damages because of an allegedly defective roof without joinder of the state. Moreover, the prospect of multiplicity of litigation is abated since the state of Georgia is insulated from loss by Kellos' statutory performance bond "in the amount of at least the total amount payable by the terms of the contract." Ga.Code Ann. § 23–1705 (Cum.Supp.1979), and by the setoff of amounts due Kellos.

■ Rule 19(a)(2) comprises two alternative subparts contingent upon an initial requirement that the absent party claim a legally protected interest relating to the subject matter of the action. Given that the state, as owner of the building, has a legally protected interest in this action, the pertinent inquiry under clause (2)(ii) is whether the state's absence will subject a party to "a substantial risk of incurring double, multiple, or otherwise inconsistent obligations."

This standard relates to the first factor of Rule 19(b) which requires the court to con-

sider "to what extent a judgment rendered in the person's absence might be prejudicial to those already parties." *See Haas v. Jefferson National Bank of Miami Beach*, 442 F.2d 394, 398–99 (5th Cir. 1971). Although prejudice to the plaintiff is rarely a consideration since the plaintiff has elected the forum and the parties, *see* 3A *Moore's Federal Practice Manual* ¶ 19.07—2[1], at 19–166 (2d ed. 1979), Celotex argues that a determination of the condemnation issue favorable to Celotex would leave Kellos without a remedy against the state. This argument parallels the concern of the fourth factor of Rule 19(b)—"whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder"—and presupposes a remedy against the state. The state of Georgia, however, strictly adheres to the doctrine of sovereign immunity, *see Azizi v. Board of Regents*, 132 Ga.App. 384, 390, 208 S.E.2d 153 (1974), *cert. dismissed*, 233 Ga. 487, 212 S.E.2d 627 (1978), thus foreclosing the possibility of redress against the state. The sovereign immunity barrier moots the potential of prejudice to Kellos, and if a Rule 19(b) analysis were undertaken, would militate against finding the state an indispensable party.

■ A determination of prejudice to Celotex for nonjoinder under clause (2)(ii) requires a "substantial risk" not merely a probability; the emphasis is upon the practical consequences of nonjoinder rather than on the legal or res judicata effect. *See Haas v. Jefferson National Bank of Miami Beach*, 442 F.2d 394, 398 (5th Cir. 1971). As discussed earlier, the state of Georgia is protected from loss by Kellos' statutory performance bond, thus substantially mitigating the seriousness of an action by the state. *See Advisory Committee's Note*, 39 F.R.D. 89, 92 (1966). The theoretical possibility of a subsequent action by the state does not warrant joinder, or, under Rule 19(b), dismissal for nonjoinder,[5] especially since Kellos would have no

---

**5.** In the terminology of Rule 19(a) joinder of the state is not feasible. Celotex argues that the state is a citizen of the state of Georgia, and its joinder would defeat diversity jurisdiction.

Of course, a state is not considered a citizen for purposes of diversity. *See Postal Telegraph Cable Co. v. Alabama*, 155 U.S. 482, 15 S.Ct. 192, 39 L.Ed. 231 (1894). A more appropriate

remedy against the state. The standards of Rule 19(a) do not mandate joinder of the state.

### III

Celotex raises several other contentions in its motion to dismiss which challenge the substantive sufficiency of Kellos' claim. Kellos' complaint against Celotex alleges that Celotex "negligently delivered" roofing material to Roofing Specialties, Inc.— that the roofing material did not conform with the specifically designated and described roofing material in the contract between Kellos and Roofing Specialties, Inc. Celotex argues that the claim is not actionable under Georgia law.

 An action based upon negligence [6] is not cognizable under Georgia Law where the alleged damages are economic. *See Long v. Jim Letts Oldsmobile, Inc.*, 135 Ga.App. 293, 295, 217 S.E.2d 602 (1975). Thus Kellos has no cause of action against Celotex for damages which "are economic; diminution in value, and out of pocket expenses for repairs." *Id.* at 295, 217 S.E.2d at 605. In *Mike Bajalia, Inc. v. Amos Construction Co. Inc.*, 142 Ga.App. 225, 235 S.E.2d 664 (1977), for example, the Georgia Court of Appeals recognized that there is no recovery in negligence against a building supplier for damages to building components furnished by the supplier arising from defects in those same components. *Id.* at 226, 235 S.E.2d 664. Recovery, however, may be had on a theory of negligence where components supplied by other sources are damaged because of defects in the building supplier's components. *Id.*

Kellos' complaint avers that its expectations arising under the contract between Kellos and Roofing Specialties, Inc. and made applicable to Celotex by its agreement with Roofing Specialties, Inc. were not met. The basis of the complaint is the alleged failure of Celotex to deliver roofing material which met the specifications in the contract between Kellos and Roofing Specialties, Inc.; the operative phrase is "negligent delivery." The complaint does not assert, nor do the pleadings reveal that the roofing material supplied by Celotex damaged other portions of the building. Based upon the allegations of the complaint, Kellos does not state a claim for damages actionable under a theory of negligence.

Accordingly, the complaint of A. J. Kellos Construction Co., Inc., plaintiff, against Celotex Corporation, defendant, is hereby dismissed.

---

argument is that the Eleventh Amendment would preclude joinder. *See Stanton v. Ash*, 384 F.Supp. 625 (D.C.Ind.1974).

**6.** Kellos' action does not sound in contract since there is no privity between Kellos and Celotex. Furthermore, Kellos may not sue under a strict liability theory since only natural persons may bring such actions. Ga.Code Ann. § 105–106 (Cum.Supp.1979).