**Flossie Marie MASSEY et al.,**
**Plaintiffs,**

v.

**THIOKOL CHEMICAL CORPORATION**
**and United States of America,**
**Defendants.**

**Civ. A. No. 1161.**

United States District Court,
S. D. Georgia,
Brunswick Division.

Dec. 21, 1973.

Joseph Jones, Jr., Hill, Jones & Farrington, Atlanta, Ga., and Savannah, Ga., for plaintiffs.

Edward E. Dorsey, Daryll N. Love, Powell, Goldstein, Frazer & Murphy, Atlanta, Ga. Wallace E. Harrell, Bennet, Gilbert, Gilbert, Whittle, Harrell & Gayner, Brunswick, Ga., for Thiokol.

Wayne P. Yancey, Deputy Asst. Atty. Gen., on brief as amicus curiae, for State of Ga.

LAWRENCE, Chief Judge.

## ORDER ON THIOKOL'S MOTION FOR SUMMARY JUDGMENT

### I

### *History of Litigation*

This action seeking damages totalling $550,000,000 has been brought by plaintiffs against the United States and Thiokol Chemical Corporation. All plaintiffs are black. The basis of jurisdiction as to Thiokol is diversity of citizenship. The litigation grows out of an explosion that occurred on February 3, 1971, at the plant of Thiokol in Camden County, Georgia, in which twenty-eight employees were killed. Thiokol was engaged in manufacturing surface trip flares alleged to be "highly explosive, flammable and inherently dangerous products". It is sued as a joint tort feasor along with the United States. Liability of the Government is based on the Federal Tort Claims Act. 28 U.S.C.A. § 2671 et seq.

All of the plaintiffs are employees of Thiokol or dependents or next of kin of employees. The defendant in question has moved for summary judgment. It asserts that the claim of each of the plaintiffs is barred under the Workmen's Compensation Act of Georgia. The affidavit and the exhibits accompanying the motion establish that Thiokol was covered by the Act; that no employee who is a plaintiff or for whose death claim is made in this action rejected coverage and that workmen's compensation benefits have been paid to and accepted by each injured plaintiff or by the personal representative, dependent or next of kin of deceased employees.[1]

---

1. The acceptance of benefits under the Workmen's Compensation Act makes doubtful whether the plaintiffs in this case have standing to challenge the wage-related concept of computing compensation. See, e. g., Senters v. Wright & Lopez, Inc. et al., 220 Ga. 611, 140 S.E.2d 904; Slick v. Hamaker, 28 F.2d 103 (8th Cir.); Booth Fisheries

Shortly before the argument last July of Thiokol's motion, counsel for plaintiffs filed a brief in which was raised the issue of the constitutionality of the Georgia Workmen's Compensation statute. Plaintiffs contend that various sections thereof violate the Fifth and Fourteenth Amendments, namely, the provisions of the Act using average weekly earnings in the formula for determining compensation. The claim of invalidity is couched in broad and conclusory terms. This Court directed that the complaint be amended so that the constitutional infirmities of the legislation are specifically set out. The amendment filed merely repeats what was previously alleged: the sections of the Act in question are violative of the Fifth and Fourteenth Amendments and the statute "both on its face and in its application . . . is arbitrary and unreasonable with no discernible standard and discriminates against low income employees, the poor white, the young and and the black."

Taken by itself, the complaint possibly falls short of the specificity demanded where a law is challenged as violative of the federal Constitution. Conclusory allegations as to unconstitutionality are not enough to support such a claim. Campbell v. Supreme Court of Florida, 428 F.2d 449 (5th Cir.). However, I think the constitutional attack here is sufficiently explicit. This is especially so in the light of the oral argument last July and the request then made by plaintiffs' counsel for opportunity to present certain statistics from the records of the Workmen's Compensation Board. Such data was to be used to support the claim of discriminatory effect on plaintiffs and other groups of

the earnings approach to computing compensation for death or injury. I granted two months therefor and subsequently extended the time to December 3rd. A statistical analysis has been filed by plaintiffs. I will recur to it after summarizing the contentions of plaintiffs as gathered from their reply brief.

II

*Contentions of Plaintiffs*

The argument of counsel for plaintiffs boils down to something like this:

The black employees of Thiokol injured or killed in the explosion were unskilled laborers receiving the minimum hourly wage. Their low earning capacity is the consequence of the long history of socio-economic discrimination by the State of Georgia under which blacks are relegated to lower-paying jobs.[2] The formula for fixing compensation under the Workmen's Compensation Act discriminates against blacks, women, the young and the marginally-educated white employees. There is no rational basis for compensating employees who are members of these black and minority groups differently for the same injury or disability as are employees with higher earnings. As a result of systematic discrimination in employment and pay, which has been "sanctioned" by the State, awards of compensation to blacks and poor whites are proportionately lower for death and the same injury. Statistics compiled from a random sampling of the records of the Board of Workmen's Compensation establishes a discernible difference and disparity in benefits paid to whites and blacks for the same job injuries.

---

Company et al. v. Industrial Commission of Wisconsin et al., 271 U.S. 208, 46 S.Ct. 491, 70 L.Ed. 908; 16 C.J.S. Constitutional Law § 90, p. 284; 16 Am.Jur. Constitutional Law § 135. However, the defendant has not raised the question of estoppel or waiver and I do not deal with that issue.

2. The brief of plaintiffs points out that in 1969, 20.7% of all Georgians was below the

poverty level and that of these only 12.3% was white while the black population was 44.7% below the poverty level. While 4.8% of the white population was employed as laborers (except farming), 20% of all blacks and other minorities was employed as laborers. See 1970 Census of Population, U. S. Department of Commerce, Bureau of the Census, Washington, D. C.

In enacting the legislation and adopting the average earnings formula, the General Assembly failed to consider and take into account the historical discriminatory economic factors. They render what is equal on its face unequal in its racial impact. The Workmen's Compensation Act is facially and operatively arbitrary and unreasonable, say plaintiffs, in the effect of the earnings formula of compensation. If the rate of compensation fixed is unreasonable, the Act prescribing same is invalid. The statutory compensation deprives plaintiffs and black employees generally of Equal Protection under the Fourteenth Amendment.

The fact that the State of Georgia has long practiced a policy does not place same beyond attack on ground of discrimination. Legislation that has outlived its usefulness and which eventually defeats its original purpose must be changed.

So runs the argument of plaintiffs as to the constitutional issue.

### III

*Comparison of Death and Disability Benefits Paid to Whites and Blacks under the Georgia Workmen's Compensation Act*

A. The Georgia State Board of Workmen's Compensation commendably cooperated with the Court and plaintiffs' counsel in supplying data from its files during the period 1970–1973. A random sampling of 100 death cases of males was furnished. Seventy-eight employees were white, fifteen black and seven unknown. A similar sampling was furnished as to compensation paid in 200 bodily member cases. Such claims involved 113 white males, 48 black males, 11 white females and 3 black females. Based thereon, a data analysis was made by Dr. Donna R. Brogan, Associate Professor Biometry & Statistics, Emory University. Her report is attached as an exhibit to plaintiffs' reply

brief and has been made part of the record in this case.

In respect to death claims the study reflects that the deceased white employees had a median weekly salary of $147 compared to $102 for blacks. However, the average compensation differed but slightly, $15,955 to whites and $15,927 for blacks. The close correlation is attributed to the fact that the maximum death benefits payable during most of the period covered by the study was $17,000.[3] Two-thirds of the black and three-fourths of the white dependents received the maximum.

As to specific member injuries the analysis revealed the following median wages and compensation between whites and blacks:

*4th finger:* the median compensation paid to 9 black males was $1,076 and to 21 whites, $1,250. The median weekly wages of the whites was $99 and the blacks $71.

*3rd finger:* the median compensation paid to 5 black males and 14 white males was approximately the same, being close to the statutory maximum of $1,500.

*2nd finger:* the median compensation paid to 7 black males was $1,515 compared to $1,724 for 16 whites.

*1st finger:* the median compensation paid to 17 black males was $1,965 as compared to $1,976 to 33 white males.

*thumb:* the median compensation paid to 2 black males was $2,645 and $2,944 to 8 white males.

*eye:* the median compensation paid to 4 black males was $5,340 and to 9 white was $5,947. The median weekly earnings were $72 and $104, respectively.

The number of white and black females as to whom data was available is too small for meaningful analysis. However, there was a significant difference, according to Dr. Brogan, in compensation paid for first finger loss to white males and white females: $1,746

---

3. The present death benefit is the same as in the case of total disability, a maximum of $65 for 400 weeks or $26,000. Georgia Laws, 1973, pp. 236, 240–241.

for 6 females compared to $1,976 for 33 males.

Dr. Brogan summarized her study as follows:

"A random sample of 93 male death cases indicated that blacks and whites received about the same compensation for death, primarily because ⅔ to ¾ of each group received the maximum compensation of $17,000.

"A random sample of 200 injury cases, where the injury was for total loss of use or dismemberment of limb or member, suggested strongly that blacks received less compensation than whites for equivalent injuries. However, the number of females in the sample was too small to draw any conclusions about whether females received less compensation than males for equivalent injuries."

B. Thiokol has filed a response to the findings of Dr. Brogan in the form of an analysis by Dr. Albert H. Clark, Professor of Finance, and Dr. Merwyn L. Elliott, Associate Professor of Quantitative Methods, Georgia State University. They find that in the 100 death cases there was no evidence of discrimination between blacks and whites. Indeed, there is even a possibility of the reverse. Reviewing the claims in which *less* than the maximum benefit was paid in the case of a deceased employee, Dr. Clark and Dr. Elliott report that blacks in the group who had an average weekly wage of $90.77 received an average of $14,325 in benefits while white persons with an average weekly wage of $135.05 were awarded average death benefits of only $11,970. Apparently, this disparity results from the fact that compensation in case of death by injury varies not only with the average weekly wages but with the number and status of dependents. Thiokol's experts conclude:

"(1) There is no evidence that the death and injury benefit compensation amount paid under the Workmen's Compensation Law of Georgia has been discriminatory as to race or sex, and although the injury benefits under the Workmen's Compensation Laws of Geor-

gia are based partially upon average weekly earnings of the injured, the law is in fact not discriminatory as to race or sex in its application or its effect.

"(2) The statistical sample used by Dr. Brogan was not large enough to support her conclusions that black males receive less compensation than white males for comparable injuries."

IV

*Earnings Basis of Georgia Act Does Not Deny Equal Protection to Plaintiffs*

Plaintiffs attack the provision of the Georgia Act which states that "the average weekly wages of the injured employee at the time of the injury shall be taken as the basis upon which to compute compensation". Ga.Code Ann. § 114–402. The constitutional challenge goes also to § 114–404 dealing with compensation for total incapacity; § 114–405, partial incapacity; § 114–406 relating to compensation for specific member injuries, and § 114–413 to compensation for death resulting from injury.

◼ The purpose of the workmen's compensation legislation was to do away with common law rules governing actions by employees under the law of master and servant and to replace such antique system with one that provided absolute liability of the employer and fixed compensation for accidental injury or death. From the beginning, with isolated exceptions, statutes have been upheld as to claims of lack of due process and equal protection. See 58 Am Jur Workmen's Compensation §§ 13, 15; 99 C.J.S. Workmen's Compensation § 19. In a number of cases the Supreme Court of the United States has sustained the validity of workmen's compensation legislation. See New York Central Railroad Company v. White, 243 U.S. 188, 37 S.Ct. 247, 61 L.Ed. 667; Arizona Employers' Liability Cases, 250 U.S. 400, 39 S.Ct. 553, 63 L.Ed. 1058; New York Central Railroad Company v. Bianc, 250 U.S. 596, 40 S.Ct. 44, 63 L.Ed. 1161.

The Georgia Workmen's Compensation law was enacted in 1920. It possesses the major characteristics of such statutes, namely, elective coverage; absolute liability of an employer for income loss and medical expense in case of accident arising out of employment; insurance or security against such liability of the employer, and abrogation of common law rights of employees for negligence of the employer. The Act provides for graduated payments for disability from injury or in case of death. Indemnity for lost earnings is partial since the incentive of an injured employee to return to work might otherwise be reduced.

At the time of the Thiokol explosion the law as then existing provided for payment of compensation as follows: [4]

*Total incapacity*: 60% of average wages but not more than $50 per week or longer than 400 weeks or a total of $18,000 (now $26,000).

*Partial incapacity*: 60% of the difference between average weekly wages before and after injury but not more than $39 per week or longer than 350 weeks or a total of $12,000. (Now $15,000).

*Specific member injuries*: Loss of an arm, 60% of average weekly wages during 200 weeks but not more than $10,000. (Now $13,000).

*Dependents wholly dependent on a deceased employee*: 85% of the weekly compensation for total disability for a period not exceeding 400 weeks or $17,000. (Now $26,000).

Compensation or benefits under state and federal social legislation graduated according to earnings is a familiar concept. Such standard is used in a variety of statutes, including the Social Security Act (42 U.S.C.A. § 415); the Federal Employees' Compensation Act (5 U.S.C.A. § 8101 et seq.); veterans' pensions; compensation for injuries to prisoners received in industrial activity at institutions where they are confined (18 U.S.C.A. § 4126; 28 C.F.R. § 301.12), and the Georgia Employment Security Act (Ga.Code Ann. §§ 54–604, 54–621).[5]

Under the Longshoremen's and Harbor Workers' Compensation Act, payments for disability or death are based upon prescribed percentages of average weekly wages. 33 U.S.C.A. § 901–950. In Crowell v. Benson, 285 U.S. 22, 52 S. Ct. 285, 76 L.Ed. 598, the Supreme Court held that neither the classifications nor the extent of the compensation provided were unreasonable and that the statute consists with due process under the Fifth Amendment.

Besides the present case, only two decisions appear to deal with racial impact of compensation laws. In Rios v. Oregon Automobile Insurance Company et al., 477 F.2d 288 the Ninth Circuit sustained the validity of the Oregon Workmen's Compensation law in respect to the computing of compensation of injured farmworkers, a class that represents a racial minority. The different formula under that Act applied to farmworkers reflects the seasonal nature of such labor. Farm laborers are compensated on the basis of one fifty-second of earnings in the past twelve months instead of the weekly wage standard used in the case of other injured employees. The Circuit Court of Appeals said:

"It may well be that farmworkers generally get lower benefits than other workers because they earn less.

---

4. See Georgia Laws, 1968, pp. 4–6; 1963, pp. 147–149; Ga.Code Ann. §§ 114–404, 114–405, 114–406, 114–413. In April, 1971, the limits for total and partial incapacity and death were increased. However, the larger benefits are not applicable to injuries in the Thiokol explosion which occurred on February 3, 1971. A number of States automatically and periodically accelerate benefits in order to meet the problem of increase in cost of living.

5. A different approach was adopted by Congress in the Federal Coal Mines Health and Safety Act of 1969 in respect to "black lung" benefits. Death and total disability is compensated at a rate equal to 50 per centum of the minimum monthly payment to which a Federal employee in Grade GS–2 is entitled for total disability. 30 U.S.C.A. § 922.

But such economic discrimination in social welfare legislation is justified by a 'reasonable basis' for the distinction. Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). It is permissible for the Oregon legislature to scale workmen's compensation benefits to wages earned."

The other case involving racial impact is Doe v. Hodgson, Secretary, 344 F. Supp. 964 (S.D., N.Y.). There a broad Federal constitutional attack was made by farm laborers on various New York social-legislation statutes, including the workmen's compensation law. It was alleged that the agricultural labor force in the State had become "overwhelmingly black and chicano" and that certain exclusions in the statutes constitute arbitrary discriminations denying due process and equal protection. The District Court declined to invoke a three-judge court and dismissed the complaint on the ground that the Federal claims were unsubstantial. It found that the legislative "judgments are rational, and not invidious" and are grounded in views "lacking in racial motivation," citing Jefferson v. Hackney, 406 U.S. 535, 548, 92 S.Ct. 1724, 1732, 32 L.Ed.2d 285.

Arguing that one person's arm is worth no more than another person's, counsel stresses the instance of the first named plaintiff in · the present case, Flossie Massey, who lost her left arm in the explosion. She earned $64.50 per week and received $7,090.17 for the loss whereas a white employee with a salary of $98.00 per week would have received $10,000. There is a certain demotic appeal in the argument concerning equality of bodily member loss. However, a legislature is authorized to consider the fact that the greater one's earnings the greater will be his financial loss in event of such an injury. The main thing is that legislatures, not the courts, are the ones to weigh and heed such factors.

· In Flamm v. Hughes, 329 F.2d 378, 380 (2nd Cir.) the Court noted that "Congress enjoys great latitude in promulgating a statutory scheme for the compensation of workers who may suffer a broad range of injuries in terms of duration and severity." The case of Zahrobsky v. Westmoreland, 146 Pa.Super. 44, 21 A.2d 426, 427 involved a challenge of the Pennsylvania law by an employer who claimed that an excessive standard of compensation is applied to the death of a minor. The Court said that "the Legislature has adopted a formula based upon the percentage of the earnings and, on the present record, we find no basis for declaring it unreasonable." In Richardson, Secretary v. Belcher, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 the United States Supreme Court held that a reduction in existing social security benefits so as to reflect workmen's compensation payments to a beneficiary has a rational legislative basis and does not violate the Due Process Clause.

In the case before us there is no showing or effort to show that the Workmen's Compensation Act is unequally applied in practice.[6] All employees are compensated for the same injury or disability under the same standard. What plaintiffs' argument comes down to is the claim that the adoption of a wage-based standard by the Georgia legislature was and is unconstitutional in the light of the long and continuing discrimination against blacks as to economic and educational opportunity. If it is "the supreme law of the Land" that legislatures must take into account such factors and considerations, they will be hard put to pass legislation using earnings of an individual as a means of computing statutory compensation or benefits. The argument that the existing formula for compensating injury is invalid because of past socio-economic discrimination against blacks and certain

6. In utilizing the claims data furnished by the Board for analysis by Dr. Brogan, some difficulty was encountered in racial identification since the recent forms have dropped reference to race.

minorities would be equally applicable to most of the States of the Union.

Counsel for plaintiffs refers approvingly to the elimination of inequities in what he terms a "progressive jurisdiction like Iowa" where the legislature recently adopted as the compensation standard a percentage of the average *statewide* wages of that State. As a matter of fact, fourteen jurisdictions, including Iowa, fix weekly benefits at a percentage of the State's average weekly wage, as calculated annually.[7] Plaintiffs also cite the suggested model Workmen's Compensation Law proposed by the Council of State Governments which calls for a formula of two-thirds of the average of statewide wages.

A leaven is undoubtedly at work in the field of work-related injury. Congress declared in the Occupational Safety and Health Act of 1970 that "[I]n recent years serious questions have been raised concerning the fairness and adequacy of present workmen's compensation laws . . . ." Under the statute the President appointed a National Commission on State Workmen's Compensation Laws to evaluate their adequacy, including the amount and duration of permanent and temporary disability benefits and the criteria for determining the maximum limitations thereon. The Report of the Commission advocates sweeping reforms. If the essential elements of its recommendations should not be adopted by a state before July 1, 1975, it has proposed that Congress impose them as minimum Federal standards. The state's average weekly wage would be the basis of determining compensation in case of disability and death. While bills have been introduced in Congress to carry out some of the Commission's proposals, no legislation has been enacted so far.[8]

Whether one state had adopted a fairer or more progressive formula than another state is neither here nor there; nor is what Congress may do in selecting a standard concept. The point is, as far as this case is concerned, that the problem addresses itself to the legislative and not the judicial branch. Inadequacy or inequity of a system of compensating for death or disability does not mean that a formula is constitutionally infirm. Neither ideality nor uniformity is required. The Supreme Court said in Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491:

> "In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'"[9]

The General Assembly of this State adopted the existing standard for computing compensation benefits some fifty-three years ago. The Board processed in 1972, 163,000 claims. A conser-

7. Compendium on Workmen's Compensation (Wash., D.C., 1973, National Commission on State Workmen's Compensation Laws), pp. 116–117. See also John V. Keaney, "What Have the States Done to Improve Their Workmen's Compensation Systems" Section of Insurance, Negligence, and Compensation Law, Proceedings, 1971, American Bar Association, 424ff. No perfect method exists. It can be argued that a statewide average is unfair to injured workers earning more than the state average. In the *amicus* brief of the State of Georgia the Iowa statute is analyzed and compared to the standard used in this State. According to the Attorney General, "The higher minimum compensation of the Georgia law would of course be more beneficial to lower income groups. Consequently, if the plaintiffs feel that the Iowa statute is progressive in its benefits to the lower income groups, then surely they must feel that the Georgia statute is very progressive."

8. See Harry W. Dahl, "Recent Developments in Workmen's Compensation Laws." The Forum, IX (Fall, 1973), 93–102 (A.B.A.).

9. See also Jefferson et al. v. Hackney, Commissioner, *supra*, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 and Romero v. Hodgson, Secretary, 403 U.S. 901, 91 S.Ct. 2215, 29 L.Ed.2d 678.

vative estimate of the total number of claims handled under the Workmen's Compensation Law since 1920 would be in the range of two and a half million. It seems a little late in the day to discover suddenly that all this time the law had denied equal protection to blacks and lower income employees.

Georgia's basis of computing compensation does not violate the Equal Protection of the Fourteenth Amendment either facially or in the application thereof to blacks or low income segments of the State's employed population.

V.

*Exclusivity of Remedy under the Workmen's Compensation Act is Valid*

█ The other ground of constitutional challenge involves the provision of the Compensation Act denying all common law and other remedies to covered employees and their dependents.[10] This issue is not argued by plaintiffs' counsel and seemingly has been abandoned. I will nevertheless discuss it briefly.

The concept of exclusiveness of remedy is "a rational mechanism for making the compensation system work in accord with the purpose of the Act". Mullarkey v. Florida Feed Co., Inc. (Fla.), 268 So.2d 363. It has been frequently sustained in the past against due process challenge. See 58 Am Jur Workmen's Compensation § 20; 2 Larson, The Law of Workmen's Compensation § 65.10, § 66.20; Keller v. Dravo Corporation et al., 441 F.2d 1239 (5th Cir.), cert. denied 404 U.S. 1017, 92 S.Ct. 679, 30 L. Ed.2d 665. Denial of common law remedy to the heirs of a decedent does not violate the equal protection clause. Northern Pacific Railway Company v. Meese, 239 U.S. 614, 36 S.Ct. 223, 60 L.

Ed. 467. Taking away the right to an action for loss of consortium of an injured spouse is not a deprivation of due process. Holder v. Elms Hotel Co., 338 Mo. 857, 92 S.W.2d 620, 104 A.L.R. 339; Lunow v. Fairchance Lumber Company, 389 F.2d 212 (10th Cir.), cert. denied 392 U.S. 908, 88 S.Ct. 2062, 20 L.Ed.2d 1366; Nichols v. Benco Plastics, 225 Tenn. 334, 469 S.W.2d 135.

The Georgia courts have uniformly held that an employee cannot maintain a common law suit against his employer where both are subject to the Compensation Act. Blue Bell Globe Manufacturing Co. v. Baird, 61 Ga.App. 298, 6 S.E. 2d 83; Wall v. J. W. Starr & Sons Lumber Co., 68 Ga.App. 552, 23 S.E.2d 452; McLaughlin v. Thompson, Boland & Lee, Inc., 72 Ga.App. 564, 34 S.E.2d 562; Southern Wire & Iron, Inc. v. Fowler, 217 Ga. 727, 124 S.E.2d 738; United States Fidelity & Guaranty Co. v. Forrester, 230 Ga. 182, 196 S.E.2d 133. The exclusiveness of the remedy under the Act is a bar to a suit by a wife against her husband's employer for loss of consortium as a result of injury on the job. Anderson v. Savannah Machine & Foundry Company, 96 Ga.App. 621, 100 S.E.2d 621; Stone Mountain Memorial Association v. Herrington, 225 Ga. 746, 749, 171 S.E.2d 521; Gulf States Ceramic v. Fenster, 228 Ga. 400, 185 S. E.2d 801. The Supreme Court said in *Fenster* that the legislative intent was to bring "the entire family group" within the purposes and coverage of the Act.

The contention that the exclusive remedy provision of the statute denies due process is without merit.

ORDER

Concluding that the earnings formula of the Georgia law does not violate the Equal Protection clause of the Four-

---

10. Section 114–103 of the Georgia Code provided at the time of the Thiokol explosion: "The rights and remedies herein granted to an employee where he and his employer have accepted the provisions of this Title respectively to pay and accept compensa-

tion on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents, or next of kin, at common law or otherwise on account of such injury, loss of service or death."

teenth Amendment and that exclusivity of remedy thereunder is valid, this Court grants the motion of Thiokol Chemical Corporation for summary judgment and dismisses the action as to such defendant.