**WMX TECHNOLOGIES, INC.,**
**a Delaware Corporation,**
**Plaintiff,**

**v.**

**Durward W. JACKSON, Defendant.**

**Civil Action No. 95–A–92–N.**

United States District Court,
M.D. Alabama,
Northern Division.

July 3, 1996.

Peter S. Fruin, Montgomery, AL, James L. Priester, Birmingham, AL, for plaintiff.

Robert D. Segall, Lee H. Copeland, George W. Walker, Robert E. Gilpin, Montgomery, AL, for defendant.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, District Judge.

### I. INTRODUCTION

This cause is before the court on a Motion to Dismiss, filed by Durward W. Jackson ("Jackson"). For the reasons stated below, the court finds that Jackson's Motion to Dismiss is due to be denied.

### II. STATEMENT OF THE CASE

WMX is a Delaware corporation with its principal place of business in Oak Brook, Illinois. Jackson is an individual who resides in Montgomery County, Alabama. The amount in controversy exceeds $50,000. This court has subject matter jurisdiction over this cause on the basis of diversity of citizenship. 28 U.S.C. § 1332.

On January 20, 1995, WMX filed its Complaint against Jackson seeking declaratory and injunctive relief. The complaint alleges the following facts:

On or about October 1, 1993, WMX, Jackson, and other corporations signed an acquisition agreement, dated September 28, 1993.

The acquisition agreement was executed and signed by Durward W. Jackson and the following entities: WMX, Waste Away Acquisition Sub, Inc., Salem Acquisition Sub, Inc., Brundidge Acquisition Sub, Inc., Waste Away, Inc., Waste Away Group, Inc., Waste Away Group Leeco, Inc., Durjac One, Inc., Durjac Two, Inc., Durjac Four, Inc., Durjac Five, Inc., Durjac Six, Inc., Durjac Eight, Inc., Durjac Nine, Inc., Durjac Twelve, Inc., Durjac Sixteen, Inc., Durjac Eighteen, Inc., Brundidge Waste Disposal Center, Inc. and Waste Services Inc. By the terms of the acquisition agreement, WMX acquired Jackson's stock and interest in various business operations, equipment, contracts, and real estate relating to the solid waste collection and disposal industry in exchange for WMX stock.

In the acquisition agreement WMX is referred to as "Waste Management." Article IV of the acquisition agreement states that "[t]he Shareholder (Jackson) covenants and agrees with Waste Management (WMX)" to indemnify and hold "Waste Management (WMX), each of the Companies and their respective subsidiaries, divisions, affiliates, officers, directors and employees (collectively, the Waste Management Indemnitees) harmless from and against" certain indemnified losses.[1] See Acquisition Agreement § 4.7.1 & 4.7.2. The indemnified losses include losses and liabilities arising from prior business operations or from the breach of obligations and representations contained in the Acquisition Agreement. See Acquisition Agreement § 4.7.2.

In September, 1994, WMX made a demand upon Jackson for various indemnified losses totaling $3,595,107.27. (See Everett Aff.).[2] Jackson subsequently rejected all of WMX's claims for indemnification. In a letter dated October 7, 1994, Jackson accused WMX of engaging in bad faith dealings and fraudulent acts, and demanded the right to defend the underlying claims and actions for which

---

**1.** "The Shareholder covenants and agrees with Waste Management as follows:" Acquisition Agreement, at 30.

**2.** On or about September 8, 1994, WMX sent Jackson notice of its claims for indemnification. On or about September 30, 1994, WMX gave Jackson a supplemental notice of its claims for indemnification.

WMX seeks indemnification. These events precipitated the filing of the instant action.

In Count One of the Complaint, WMX seeks equitable and declaratory relief and requests the court to do the following: 1) interpret and declare the parties' rights under the acquisition agreement; 2) enforce the terms and provisions of the acquisition agreement and require Jackson to submit to arbitration any disputes related to the acquisition or the acquisition agreement;[3] 3) enjoin Jackson, his agents, attorneys, representatives, assigns and all persons claiming through and under him, from instituting or proceeding in any action in federal or state courts relating to the acquisition and the acquisition agreement, including claims for indemnified losses, claims alleging bad faith dealings or fraudulent acts, and Jackson's demand to defend the underlying claims and actions for which WMX seeks indemnification; 4) retain jurisdiction over the parties to resolve any other controversies which may arise involving the acquisition, the acquisition agreement or arbitration of disputes relating thereto; and 5) award WMX reasonable attorney's fees, costs and other equitable relief.

In Count Two, WMX requests the court to enter a declaratory judgment holding that Jackson is not entitled to defend any of the underlying claims and actions for which WMX seeks indemnification. WMX also seeks a declaratory judgment finding that Jackson waived his right to defend underlying claims and actions for which WMX seeks indemnification because Jackson failed to give written notice to WMX within 10 days of his receipt of notification of such losses as required by § 5.2 to the acquisition agreement. In the alternative, WMX seeks declaratory relief that § 5.2 of the agreement gives Jackson the right to defend only certain types of underlying claims and actions for which WMX seeks indemnification. WMX further requests that the court retain jurisdiction over this action if the dispute over Jackson's ability to defend such claims and actions is not subject to arbitration.

In Count Three, WMX requests the court to enter a declaratory judgment holding that WMX has not engaged in acts of bad faith or fraud, or any other conduct for which it might be liable to Jackson.

In Count Four, WMX seeks declaratory judgment holding that WMX did not engage in any conduct which would entitled Jackson to indemnification. WMX also requests the court to retain jurisdiction over the dispute, to the extent that this issue is not subject to arbitration.

In Count Five, WMX requests the court for judgment against Jackson in the amount of $3,595,107.27, plus interest, costs, and attorney's fees for the indemnified losses.

## III. DISCUSSION

Jackson states three grounds for dismissal of the complaint. First, Jackson asserts that the complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(7) for failure to join indispensable parties under Fed.R.Civ.P. 19. Second, Jackson contends that this action should be dismissed because WMX's claims are not ripe and amount to a request for an advisory opinion. As a third basis for dismissal, Jackson asserts that WMX lacks standing to maintain or is otherwise precluded from maintaining the present action because WMX is a foreign corporation transacting business without a certificate of authority as required by *Code of Ala.* § 10–2B–15.02 (1975).

### A. FAILURE TO JOIN AN INDISPENSABLE PARTY

■ The parties which Jackson claims are indispensable are subsidiary corporations of WMX. They are Alabama corporations which were acquired by WMX pursuant to the Acquisition Agreement and were parties to the Agreement. Jackson contends that these corporations have a contractual right to indemnity under the Agreement and that because of that he could be subject to separate suits by them. A federal district court

---

**3.** WMX states that these disputes include but are not limited to the following: WMX's claim for indemnified losses, Jackson's claim that WMX engaged in bad faith dealings and fraudulent acts, Jackson's demand to defend the underlying claims and actions for which WMX seeks indemnification, and Jackson's demand for indemnification.

in its discretion may dismiss an action for failure to join an indispensable party. *See* Fed.R.Civ.P. 12(b)(7) and 19; *see also Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1967); *Envirotech Corp. v. Bethlehem Steel Corp.,* 729 F.2d 70 (2d Cir.1984).

When deciding whether a party is indispensable, the district court must first determine whether the party in question is a necessary party to the action under Fed. R.Civ.P. 19(a). *See Provident Tradesmens Bank,* 390 U.S. at 118, 88 S.Ct. at 742; *see also Florida Ins. Guar. Ass'n, Inc. v. Carey Canada, Inc.,* 123 F.R.D. 356, 357–58 (S.D.Fla.1988); *Spiller v. Tennessee Trailers, Inc.,* 97 F.R.D. 347, 348 (N.D.Ga.1982). If the party is necessary, but joinder would deprive the court of subject matter jurisdiction, the district court must then determine under Fed.R.Civ.P. 19(b) whether "in equity and good conscience" the action should proceed among the parties before it, or alternatively, whether it should be dismissed. *See Provident Tradesmens Bank,* 390 U.S. at 102, 88 S.Ct. at 733 ("the decision to proceed is a decision that the absent person is merely 'necessary' while the decision to dismiss is a decision that he is 'indispensable' "); *see also Challenge Homes, Inc. v. Greater Naples Care Center, Inc.,* 669 F.2d 667 (11th Cir. 1982); *Haas v. Jefferson National Bank,* 442 F.2d 394 (5th Cir.1971); *Schutten v. Shell Oil Co.,* 421 F.2d 869 (5th Cir.1970).

### Rule 19(a): "Necessary Party"

The first step in the court's analysis is to decide whether the WMX subsidiaries are necessary parties under Fed.R.Civ.P. 19(a). *See Spiller,* 97 F.R.D. at 348; *see also A.J. Kellos Constr. Co. v. Balboa Ins. Co.,* 495 F.Supp. 408 (S.D.Ga.1980). Fed.R.Civ.P. 19(a) provides as follows:

(a) A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

Fed.R.Civ.P. 19(a).

The court finds that the subsidiaries are not necessary parties. This conclusion is based on the clear language of the Agreement. Jackson does not himself make any claim against any of these corporations; he only contends that he has claims against WMX. Therefore, the issue is whether the subsidiaries have any rights of indemnity independent of WMX. They do not.

Jackson does not cite any basis for the subsidiaries to assert a claim for indemnity other than the Acquisition Agreement. In the Agreement, however, Jackson covenants only with WMX that he will indemnify the subs. If Jackson wrongfully fails to do so, it is the promise to WMX, not to the subs, which has been breached. Section 4.8(a) names WMX as the party to give notice to Jackson of any claimed indemnified loss, gives WMX a security deposit and the right to set off indemnified losses against the deposit, requires Jackson to notify WMX of any intention to dispute a claim, and gives WMX, not a subsidiary, the right to appoint one of the three arbitrators to resolve a disputed indemnity claim.

The subsidiaries are, at best, third party beneficiaries of the indemnity agreement. Since, however, the covenant to indemnify is with WMX and WMX is the party given the right to enforce the covenant, it is WMX which would be both necessary and indis-

pensable to any claim for indemnity. Therefore, Jackson has no "substantial risk of incurring double, multiple, or otherwise inconsistent obligations" by virtue of separate suits by subsidiaries. The claims are being asserted by WMX under the provisions of the Agreement, the subsidiaries are parties to the Agreement which established the procedure for asserting indemnity claims, and the subsidiaries would clearly be bound by the results of the procedure to which they agreed.[4] Furthermore, when other courts have considered the issue of required joinder, "the argument that a third party beneficiary must be joined in a dispute between the original parties has not been successful." 7, Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d,* § 1613, p. 187, and see cases cited therein.

Since complete relief can be accorded among the existing parties, the disposition of this case will not as a practical matter impair or impede any rights of the subsidiaries, and Jackson will not be subjected to any substantial risk of a double recovery, the WMX subsidiaries are not necessary parties under Rule 19(a), and it is unnecessary to address Rule 19(b).

Jackson's motion to dismiss on the ground of failure to join indispensable parties is due to be denied.

### B. RIPENESS OF CLAIM

■ Jackson contends that this action should be dismissed because the claims are not "ripe" for adjudication, citing the following standard to be applied to the issue:

> The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in each case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal in-

terests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Browning–Ferris Industries of Alabama, Inc. v. Alabama Department of Environmental Management,* 799 F.2d 1473 (11th Cir.1986), quoting *Maryland Casualty Co. v. Pacific Coal & Oil Company,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).

Using that standard, it is clear to the court that the complaint alleges a live controversy which is ripe for decision, and does not merely seek an advisory opinion.

WMX has made indemnity claims which have been rejected by Jackson, with a threat to take legal action himself. Jackson has made demands on WMX to defend underlying claims, which demands have been rejected by WMX. Jackson has asserted a claim for indemnification under the Agreement, and this has been rejected by WMX. All of this is sufficient to establish an "actual controversy" sufficient to invoke jurisdiction under the Declaratory Judgment Act.

Jackson's Motion to Dismiss on the ground of lack of ripeness is due to be denied.

### C. QUALIFICATION TO DO BUSINESS

■ Finally, Defendant contends that the Plaintiff, a Delaware corporation with its principal place of business in the state of Illinois, cannot maintain this action without first qualifying to do business in the state of Alabama. He does not contend that the contract is void.

It is agreed that the Plaintiff is a foreign corporation which has not qualified to do business in Alabama. It is also agreed that the contract in question involves interstate commerce. Furthermore, it is agreed that prior to amendments to the law made by the Alabama legislature in 1994, a foreign corporation's failure to qualify to do business in Alabama presented no impediment to suit on a contract involving interstate commerce. Defendant's only contention is that since the law was changed to simply require a foreign

4. This also dictates denial of the motion on the related ground that WMX has no standing to assert claims for indemnification losses allegedly suffered by the other corporations. Motion to Dismiss, ¶ 3.

corporation to qualify to do business before being allowed to continue with its suit, rather than making the contract sued on void, the reason for exempting suits on interstate commerce no longer exists. Defendant cites no authority for this proposition, and the court finds none.

The court holds that the Alabama statutes regarding qualifying to do business in this state still have no application to a contract involving interstate commerce. Accordingly, Defendant's Motion to Dismiss based on failure to qualify is due to be denied.

## CONCLUSION

For the reasons given above, it is hereby

ORDERED that the Defendant's Motion to Dismiss is DENIED.